# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN NOAH SHAPIRO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-CV-313-BAH** |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT'S MOTION FOR OPEN AMERICA STAY

Defendant, United States Department of Justice ("DOJ"), on behalf of the Federal Bureau of Investigation ("FBI"), hereby moves for a stay of proceedings by and through undersigned counsel pursuant to 5 U.S.C. § 552(a)(6)©), and *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). In support of this motion, defendant respectfully submits the attached memorandum of points and authorities with a supporting declaration (attached as Exhibit 1), and a proposed Order. Plaintiff seeks voluminous records from the FBI pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, pertaining to himself and numerous other individuals and organizations. Despite its diligent efforts under the exceptional circumstances prevailing in this case, the FBI has not yet been able to complete the processing of Plaintiff's requests. Thus, under these circumstances, an *Open America* stay of production of records is appropriate. Defendant respectfully requests that the proposed stay should expire on September 30, 2019.

Pursuant to LCvR 7(m), the Government has conferred with Plaintiff's counsel who opposes this motion.

August 1, 2012                                     Respectfully submitted,

RONALD C. MACHEN JR, D.C. BAR # 447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Civil Chief

By:____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN NOAH SHAPIRO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-CV-313-BAH** |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

**UPON CONSIDERATION** of Defendant's Motion for an *Open America* Stay, it is hereby

**ORDERED** that Defendant's Motion is granted, and

**ORDERED** that production of records in this case are stayed until September 30, 2019.

**FURTHER ORDERED** that Defendant shall file progress Status Reports every 60 days on processing updates pertaining to Plaintiff's request.

_____
HONORABLE BERYL A. HOWELL, U.S.D.J.

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530

Jeffrey L. Light, Esq.
Law Office of Jeffrey Light
1712 Eye Street, NW, Suite 915
Washington, DC 20006

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Defendant's Motion for an *Open America*

Stay, accompanying Memorandum and Exhibits, and Proposed Order to be served by first class

mail upon plaintiff via ECF.

on this 1st day of August, 2012          _____/s/_____

KENNETH ADEBONOJO
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**RYAN NOAH SHAPIRO,**                               )
                                                    )
     **Plaintiff,**                                 )
                                                    )
       **v.**                                    )         **Civil Action No. 12-CV-313-BAH**
                                                    )
**DEPARTMENT OF JUSTICE,**                           )
                                                    )
     **Defendant.**                                )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR OPEN AMERICA STAY

## INTRODUCTION

The U.S. Department of Justice (the "Government" or "Defendant"), by and through the undersigned counsel, hereby respectfully submits this memorandum of points and authorities in support of its motion for a stay pursuant to *Open America v. Watergate Special Pros. Force*, 547 F.2d 605 (D.C. Cir. 1976). The Court should grant the Government's *Open America* stay request because, as demonstrated below, the unique and exceptional circumstances presented by this case as well as the Federal Bureau of Investigation's due diligence in processing Freedom of Information Act ("FOIA") requests, including Plaintiff's, merit the requested stay. In addition, the Government proposes a structured plan for the release of responsive records which effectively balances all of the FBI's FOIA obligations.

Plaintiff is a prolific FOIA requester. Initially, he filed four separate actions, but this Court ordered him to consolidate them into one action. This action now comprises 81 different FOIA requests for records related to Plaintiff, his associates, organizations, and events related to animal rights extremism. As of this date, the FBI estimates it has identified approximately

350,000 pages of responsive records, although that number is likely to increase.  *See* Second Declaration of David M. Hardy, attached hereto as *Ex. A* (hereinafter "Second Hardy Decl."),  ¶ ¶ 22.  Defendant moves for this *Open America* stay pursuant to 5 U.S.C. § 552(a)(6)© on the grounds that exceptional circumstances exist and the FBI has exercised due diligence in processing pending FOIA requests, including Plaintiff's, and reducing its backlog.  Exceptional circumstances exist because of the drastic increase in FOIA requests filed with the FBI in light of limited resources.  Furthermore, the FBI has demonstrated due diligence in responding to FOIA requests and in reducing its backlog of requests, which have risen precipitously in the last year.  These factors, taken together with the unique complexities of this case, the high volume of litigation-related work being handled by the FBI, and the serial nature of FOIA processing, pose an exceptional demand on the FBI's finite resources.  Thus, the Court should grant the FBI 's request for a stay.

## BACKGROUND

### a.    Procedural Background

As the Court is well aware, this consolidated action initially consisted of four separate actions filed by Plaintiff.[1]  On March 1, 2012, the Court Ordered that "the parties shall show cause why this case should not be consolidated with *Shapiro v. Dep't of Justice*, No. 11-cv-1835, and the plaintiff be required to file an Amended Complaint setting forth its claims in cases 12-cv-313, 12-cv-315, and 12-cv-318 against the same defendant in a single pleading."  In response, Plaintiff sought to consolidate only three of the four actions.  ECF No. 6.  The Government opposed Plaintiff's motion and submitted the First Declaration of David M. Hardy (hereinafter

---

[1]    Initially, the actions were filed as *Shapiro v. DOJ*, 11-1835 (BAH); 12-313 (BAH); 12-315 (BAH); and 12-318 (BAH).

"First Hardy Decl.") demonstrating that consolidation of all four matters would better serve judicial efficiency. ECF No. 9. By Minute Order dated June 12, 2012, the Court denied Plaintiff's motion to amend and Ordered him to file an amended complaint reflecting the consolidation of all four matters, which Plaintiff did on June 19, 2012.

Subsequently, the Court Ordered the parties to meet and confer regarding the production of responsive records. The Court Ordered the Government to produce nonexempt records responsive the Plaintiff's request concerning himself and an organization called Compassion Over Killing ("COK") by July 20, 2012. Although the Government continues to believe very strongly that, due to their interrelatedness, a more careful review of all of the documents in this action is warranted before any releases are made, the Government nevertheless complied with the Court's Order and made a release to Plaintiff on July 20, 2012. This motion pertains to the production of the remaining documents responsive to Plaintiff's numerous FOIA requests.

### b.    Plaintiff's FOIA Requests

Since 2011, Plaintiff has been the FBI's most prolific FOIA requester. *See* First Hardy Decl., ECF No. 9, *Ex*. A, ¶ 5-7. It appears that Plaintiff prolific FOIA activity pertains to his PhD dissertation and his involvement with "key individuals and organizations on opposing sides of animal use and protection conflicts." *Id*. In fact, during a specific period in 2011, Plaintiff was filing, on average, more than two FOIA requests a day, accounting for 6% - 7% of the FBI's monthly intake. *Id*. Plaintiff has continued this pattern into 2012, filing 113 FOIA requests or, on average, 28.3 FOIA requests per month between January and April of this year. *Id*., ¶ 8. At issue before the Court is Plaintiff's identified 81 FOIA/Privacy Act requests for information concerning 64 individuals, organizations, incidents, or publications related to animal rights

extremism, excluding additional requests filed since April 2012.  *See* Second Hardy Decl., ¶19, n.1.  As of this date, the FBI's Record/Information Dissemination Section ("RIDS") has nearly completed its search for records potentially responsive to all of Plaintiff's request resulting in approximately 350,000 pages of potentially responsive records as of this date.  Second Hardy Decl., ¶¶ 19-22.  However, this number is only an estimate because RIDS is still in the process of retrieving files and cross-references from field offices.  *Id*.

In responding to Plaintiff's FOIA requests, RIDS will engage in a series of separate, discreet sequential phases to process the requested records:  (1) initially receiving and perfecting the request; (2) searching for and collecting potentially responsive material; (3) scoping the material for responsiveness; (4) classification or declassification review if needed; and (5) processing responsive material for release.  Second Hardy Decl., ¶ 6.  RIDS must undertake these steps sequentially, as access to the information must be controlled to ensure its integrity.  *Id*.

Although the FBI continues to believe strongly that a stay is the better approach to enable it to review all of the requested files for interrelatedness, on July 20, 2012, the FBI released all reasonably segregable non-exempt responsive records to the Plaintiff regarding himself and "Compassion Over Killing"; the FBI reviewed approximately 2,599 pages and released 720 pages to Plaintiff in whole or in part.  *Id*. ¶¶ 23-25.  RIDS has completed comprehensive searches for records potentially responsive to the remaining  FOIA requests mentioned in Plaintiff's First Amended Complaint, but is still retrieving potentially responsive records.  *Id*. ¶¶ 19-22.

Plaintiff's FOIA requests present "unique and resource-intensive challenges" due to their

administrative complexity. *Id. ¶ 33.* Plaintiff's requests concern "64 inter-related individuals, organizations, incidents, and/or publications related to animal rights extremism." *Id.* It has taken considerable time for RIDS to search for and obtain potentially responsive records, and indeed it is still working to obtain the remaining records responsive to Plaintiff's requests. *Id.* The inter-relatedness of the responsive documents poses a unique challenge because any single document pertaining to an individual or organization must be analyzed in the context of other potentially responsive documents, especially if the file contains information related to other persons or organizations. *Id.*, ¶ 34. Finally, many of the requested documents must be analyzed for a "mosaic effect" to ensure that release of the information does not interfere with the FBI's Domestic Terrorism enforcement efforts, a major security concern. *Id.*, ¶ 35.

      **c.**      **Factual Basis for *Open America* Stay**

            1.      <u>FBI's Resources and Backlog</u>

Historically, the FBI repeatedly has sought additional funding for the creation of new FOIA positions, resulting in Congress appropriated funds in the 1997 fiscal budget providing for 129 additional employees, and in the 1998 fiscal budget, providing for 239 additional employees. *Id.* ¶ 26. Further, when the average volume of records responsive to an FBI FOIA request jumped in 2009 from 500 to 1,000 pages, in effect doubling the work required to complete a request, the FBI responded by funding 35 contract employees to assist the FOIA program. *Id.* ¶ 27.

As a result of its efforts to address backlog issues, the FBI was able to reduce the size of its backlog from 10,816 at the end of FY 1998 to 1,179 at the end of FY 2011, even with the increase in the size of each FOIA request. *Id.* ¶ 28.

Despite these efforts to address backlog issues, the FBI currently has 3,718 pending requests, totaling approximately 2.2 million pages of records. *Id.* Contributing to this increasing backlog is the fact that the volume of FOIA and Privacy Act requests submitted to the FBI shot up in recent years, following a steady decline from FY 2001 to FY 2005. *Id.* ¶ 26. In FY 2004, intake fell as low as an average of 906 requests per month and in FY 2005, intake was an average of 911 requests per month. *Id.* In contrast, however, the FBI received 17,927 FOIA and Privacy Act requests in FY 2011, or an average of 1,480 requests per month. *Id.* ¶ 28. So far in FY 2012, the FBI's intake has already exceeded its FY 2011 intake by 14%, with an average of 1,793 requests received per month. *Id.* There are approximately 2.6 million pages of records currently pending processing by the FBI; among these are 81 requests each involving in excess of 8,000 pages of potentially responsive records. *Id.* ¶ 28. This is in addition to the 3,718 backlogged requests (totaling approximately 2.2 million pages). *Id.*

2.    FBI's Due Diligence in Reducing Pending Requests

The FBI uses a three-queue system as a way to fairly assign and process new requests. *Id.* ¶ 7(a)(ii). This "multi-track" processing system sorts requests based on the amount of time and work involved in handling a particular request. *Id.* In order to ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act requests received by the FBI on an annual basis, a request is assigned to one of the three queues based on the date of receipt on a "first in, first out" basis. *Id.* The placement of a request in one of the three queues depends on the total volume of material responsive to that request: 500 pages or less = "small queue;" 501 – 2,500 pages = "medium queue;" and more than 2,500 pages = "large queue." *Id.* This standard operating procedure, coupled with the FBI's "first in, first out" policy, permits the

FBI to address requests in the order in which they are received, while simultaneously obviating the inequities to those requesters whose interests relate only to a small number of documents.[3] *Id*.

The FBI is continually considering and implementing procedures and processes to more efficiently address workload issues. *Id*. One example of a shift in procedure designed to achieve additional efficiency is described in ¶ 7©) – *i.e.*, three FOIPA Disclosure Units in RIDS have assumed "cradle to grave" responsibility for responding to FOIA and Privacy Act requests received by RIDS, to include completing initial tasks necessary to perfect requests, searching for responsive records, reviewing records, redacting exempt information and applying exemptions (other than Exemption 1/classification review), and preparing letters and records for release to requesters. *Id*. This "one stop shopping" approach will allow RIDS to move FOIA and Privacy Act requests more efficiently through the various stages of processing. *Id*. ¶ 29.

Also as part of its on-going effort to continually improve its efficiency and effectiveness, the FBI is upgrading to its FOIPA Document Processing System ("FDPS"); the upgrade will add some important features that will maximize processing and improve efficiency. *Id*. ¶ 30. However, RIDS's ability to review and process material responsive to the requests in Plaintiff's lawsuit, as well as other pending requests, will be impacted by this upgrade to FDPS. *Id*. The upgrade is currently scheduled to take place from mid-August to mid-September 2012, and will involve installation of the next generation version of the FDPS software program. *Id*. At this time, the FBI anticipates the installation process will take approximately 30 days to complete fully, and will require a complete shutdown of the system for at least five full days, although it will have a more accurate estimate once the upgrade process begins. *Id*. During this time, all FOIA work in RIDS will, of necessity, completely cease. *Id*. It is also quite possible that at

other times during this continuous 30-day period, FDPS access will be considerably degraded or virtually impossible, so productivity will be affected significantly.

        3.     <u>Pending Litigation</u>

In addition to the increasing intake and backlog issues that the FBI is currently facing, its ability to complete the processing of material responsive to Plaintiff's requests is directly affected by competing litigation resource requirements.   The FBI is currently processing, the FBI is currently a defendant in 122 FOIA lawsuits; it requires a careful balancing of resources and priorities to comply with numerous litigation deadlines while simultaneously handling an increasingly high volume of administrative requests and appeals.  *Id.* ¶ 31.  In the six cases cited as examples by the FBI in the Second Hardy Declaration, the FBI must process nearly 382,000 pages of records.  *Id*.  (In contrast, in Plaintiff's case alone, the FBI is currently estimating that there are approximately 349,000 pages of records to process.  *Id*. ¶22.)

## **STANDARD OF REVIEW**

Under the FOIA, federal agencies must respond to document requests within twenty days.  5 U.S.C. § 552(a)(6)(A).  However, the Act specifically provides that, in "exceptional circumstances," additional time may be allowed for an agency to process its records.  "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  5 U.S.C. § 552(a)(6)©).

In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), the D.C. Circuit construed this section as follows:

> In summary, we interpret Section 552 (a)(6)(c)) to mean that "exceptional
> circumstances exist" when an agency .  .  . is deluged with a volume of

> requests for information vastly in excess of that anticipated by Congress,
> when the existing resources are inadequate to deal with the volume of
> such requests within the time limits of subsection (6)(A), and when the
> agency can show that it "is exercising due diligence" in processing the
> requests.  In such situation, in the language of subsection (6)(c)), "the
> court may retain jurisdiction and allow the agency additional time to
> complete its review of the records."  Under the circumstances defined
> above the time limits prescribed by Congress in subsection (6)(A) become
> not mandatory but directory.  The good faith effort and due diligence of
> the agency to comply with all lawful demands under the Freedom of
> Information Act in as short a time as is possible by assigning all requests
> on a first-in, first-out basis, except those where exceptional need or
> urgency is shown, is compliance with the Act.

*Id*. at 616.  The Electronic Freedom of Information Act Amendments of 1996 (E-FOIA) clarified

the standard for obtaining a stay.  *See Gov't Accountability Project v. U.S. Dep't of Health and*

*Human Servs*., 568 F. Supp.2d 55, 58 (D.D.C. 2008).  In order to obtain a stay,"due diligence" in

processing requests is always necessary.  *See Gov't Accountability*, 568 F. Supp.2d at 63.

Consistent with *Open America*, the amendments exclude from exceptional circumstances any

"delay that results from a predictable agency workload of requests . . . unless the agency

demonstrates reasonable progress in reducing its backlog" of pending requests.  E-FOIA Amend.

of 1996, Pub. L. No. 104-231; § 7©), 110 Stat. 3048 (codified as amended at 5 U.S.C. § 552

(a)(6)(C)(ii)).

Following *Open America* and the 1996 amendments, courts' interpretation of the

requirements "has evolved into four conditions that must be satisfied to warrant granting an

*Open America* stay: (1) when an agency is burdened with an unanticipated number of FOIA

requests; and (2) when agency resources are inadequate to process the requests within the time

limits set forth in the statute; and (3) when the agency shows that it is exercising due diligence in

processing the requests; and (4) the agency shows reasonable progress in reducing its backlog of

requests." *Elec. Frontier Found. v. Dep't of Justice*, 563 F. Supp.2d 188, 193 (D.C. Cir. 2008).

Courts have also considered additional factors in determining whether there are exceptional

circumstances, including: the complexity of the requests, newly imposed statutory or regulatory

burdens on agencies, and other impediments that might prevent an agency from swiftly

processing a request. *Buc v. FDA*, 762 F. Supp.2d at 66 (citing *Gov't Accountability*, 568 F.

Supp.2d at 59).

Finally, agency affidavits and declarations in support of a stay under *Open America* are

given "a presumption of good faith, which cannot be rebutted by purely speculative claims about

the existence and discoverability of other documents." *Nat'l Sec. Archive v. S.E.C.*, 770 F.

Supp.2d 6, 9 (D. D.C. 2011) (quoting *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp.2d

at 117 (D. D.C. 2007)).

## ARGUMENT

### a.    The FBI has Demonstrated Exceptional Circumstances

To establish "exceptional circumstances," the agency must show both (a) that it is

"deluged with [a] volume of requests . . . vastly in excess of that anticipated by Congress," and

(b) that "existing resources are inadequate to deal with [the] volume of such requests within the

[statutorily prescribed] time limits." *Buc v. FDA*, 2011 U.S. Dist. Lexis 18802, *11 (D. D.C.

2011) (citing *Open Am.*, 547 F.2d at 616.)  Various circumstances outside the raw volume of

outstanding requests may be relevant to the determination as to whether "exceptional

circumstances" exist in a given case, including: (a) an agency's efforts to reduce the number of

pending requests; (b) the existence and amount of classified material; ©) the size and complexity

of other requests processed by the agency; (d) the resources being devoted to the declassification

of classified material of public interest; and (e) the number of requests for records by courts or administrative tribunals.  *Gov't Accountability*, 568 F. Supp.2d at 59. Critically, however, the term "exceptional circumstances" is expressly defined to generally exclude "delay[s] that result[] from a predictable agency workload of requests." 5 U.S.C. § 552(a)(6)(C)(ii); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp.2d 246, 259 n.4 (D. D.C. 2005) ("An agency must show more than a great number of requests to establish exceptional circumstances under the FOIA.").  If an agency can show no more than a "predictable agency workload of requests," exceptional circumstances will not lie "unless the agency [further] demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).

The Government has demonstrated that exceptional circumstances exist to warrant a stay because, not only do the traditional exceptional circumstances like volume exist, in this particular case, the Plaintiff's prolific FOIA activity has significantly contributed to the volume, backlog, and delays in processing.  Moreover, in addition to the sharp increase in volume that is partially attributable to the Plaintiff, is that size and complexity of the requests implicated in this action.  Furthermore, exceptional circumstances exist where disclosure could harm the FBI's statutory obligations.  *See* Declaration of Michael A. Clancy (hereinafter "Clancy Decl."), attached hereto as *Ex*. B for *in camera, ex parte* review.

As demonstrated by the attached Second Hardy Decl., as of today, with 3,718 requests, totaling an estimated 2.2 million pages of potentially responsive records awaiting assignment from the backlog to a FOIPA Disclosure Unit for processing, the FBI is experiencing its largest backlog since 2000 (3,733 requests).  Second Hardy Decl., ¶ 27.  There are approximately 2.6

-11-

million pages of information currently assigned to the five FOIPA Disclosure Units for review.

*Id*.  At the end of FY 2011 the number of pending FOIA requests was only 1,179 even though

FBI received a total of 17,755 FOIA and Privacy Act requests, or an average of 1480 requests

per month.  *Id*.

Moreover, while the size of a FOIA request has increased as a result of the 2009 changes

to the Department of Justice guidelines, the number of requests received by FBI has also

significantly risen.  *Id*.  For example, the FBI received an average of 911 requests in FY 2005.

*Id*.  However, in FY 2011, the FBI received a total of 17,755 FOIA and Privacy Act requests, or

an average of 1480 requests per month.  *Id*.  And with two months left in FY 2012, we have

already exceeded our FY 2011 intake by 14%.  For FY 2012 thus far (October 2011 through

today), the FBI has received 17,927 FOIA and Privacy Act requests, or an average of 1793

requests per month.  *Id*.

A finite pool of human resources can only accomplish so much.  *See Elec. Frontier*

*Found. v. DOJ*, 563 F. Supp.2d 188 (D. D.C. 2008) (citing *Elec. Frontier Found*., 517 F.

Supp.2d 111, 119 (stating that the Record Section "has been 'deluged with a volume of requests

for information vastly in excess of that anticipated by Congress,' and that its 'existing resources

are inadequate to deal with the volume of such requests within the time limits'" (quoting *Open*

*America*, 547 F.2d at 616.)); *see also Open America*, 547 F.2d at 613 (discussing an FBI backlog

of more than 5,000 requests that had to be processed by less than 200 employees and finding the

number of requests had been unforeseen by Congress); *Edmonds v. FBI*, No. 02-1294, 2002 U.S.

Dist. Lexis 26578, 2002 WL 32539613, at *2 (D. D.C. 2002) (finding that 1,300 new requests

each month, in addition to the backlog of pending requests, administrative appeals and litigation

constituted exceptional circumstances).

Furthermore, the size and complexity of Plaintiff's request for records is another factor that merits entry of an *Open America* stay. Plaintiff's requests present unique, and resource-intensive challenges. Second Hardy Decl., ¶ 33. The first factor that presents processing challenges is the sheer volume of requests, subject matters, and potentially responsive records involved. *Id.* The 81 FOIA requests identified in Plaintiff's First Amended Complaint concern 64 inter-related individuals, organizations, incidents, and/or publications related to animal rights extremism. *Id.* The amount of time to search for and obtain potentially responsive records has been significant, and indeed, RIDS actively continues working to obtain the remaining records responsive to plaintiff's requests. *Id.* Moreover, as indicated in paragraph 23 supra, RIDS estimates that there are 349,000 pages of potentially responsive information remaining to be reviewed for responsiveness, and if responsive, processed. *Id.*

In addition to the volume of Plaintiff's request is the added complexity due to the inter-related nature of the records in this case, which would require RIDS to consider carefully the mosaic effect of release of individual pieces of information in order to assess whether disclosure would damage the FBI's overall Domestic Terrorism enforcement efforts. Second Hardy Decl., ¶35. While a single piece of information may, on its own, appear innocuous, as part of a whole, its disclosure could be highly damaging to the FBI's Domestic Terrorism enforcement efforts. *Id.*[2] This is especially the case due to the unique nature of such investigations, which can involve multiple, inter-related investigations stemming from a single incident. Id.; *see also*

---

[2] Under the "mosaic theory," a piece of intelligence should be viewed as a "tile" forming a "mosaic" of information about an individual, organization or event. *Hatim v. Obama*, 2010 U.S. Dist. Lexis 137, *10 (D. D.C. 2010).

Clancy Decl.  The FBI can only make reasoned decisions about the effect of disclosure of any particular information by analyzing it in context with other inter-related information and determine whether, if pieced together, the information would reveal how the FBI's Domestic Terrorism program operates, and the sources, techniques, and methods it utilizes.  *Id*.  These concerns are heightened here due to the sheer volume of information that must be collected and reviewed.  For example, the true impact of the disclosure of a piece of information reviewed on Day 1 may not be fully appreciated until RIDS considers it in the context of the disclosure of other related information, which RIDS may not review until Day 50 or Day 100, etc, as well as the context of other information already in the public domain.  *Id*.

        In *Ctr. for Nat'l Sec. Studies v. United States DOJ*, in acknowledging that information could be pieced together to undermine law enforcement, the D.C. Circuit that disclosure of the detainees' names could reasonably be expected to interfere with the ongoing terrorism investigation.  331 F.3d 918, 929 (2003); see *Lewis-Bey v. United States DOJ*, 595 F. Supp. 2d 120, 137 (D. D.C. 2009)(concluding that the defendant properly redacted "confidential source codes[,] . . . dates and other identifying information" in order "to create a mosaic of protection"); *see also Edmonds v. United States DOJ*, 405 F. Supp.2d 23 (D. D.C. 2005)(concluding base on the declaration of the RIDS' Chief that although the information taken in its parts could not be classified it created a body of information that illuminated a mosaic when put together).  Not only has the same declarant stated the same conclusion here, the Government has also included the Clancy Declaration, which sheds additional support for this concern.

-14-

**b.    The FBI has Demonstrated Due Diligence in Processing FOIA Requests**

Under D.C. Circuit law, an *Open America* stay may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the agency shows that it is exercising 'due diligence' in processing the requests; and (4) the agency shows 'reasonable progress' in reducing its backlog of requests." *Wilderness Soc'y v. United States DOI*, Civ. A. No. 04-650 (CKK), 2005 U.S. Dist. Lexis 20042, at *31-32 (D.D.C. 2005) (citing *Williams v. Fed. Bureau of Investigation*, Civ. A. No. 99-3378 (AK), 2000 U.S. Dist. Lexis 17493, at *4 (D.D.C. Nov. 30, 2000) (emphasis in original) and *Summers v. Dep't of Justice*, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting first three factors)).  As set forth above, where an agency's delay is the result of a predictable backlog of requests, the agency must demonstrate that it is making "reasonable progress in reducing its backlog of pending requests" in order to establish extraordinary circumstances. 5 U.S.C. § 552(a)(6)(C)(ii).  Moreover, as a general principle under the FOIA, an agency is only entitled to a stay of proceedings if it demonstrates that it is "exercising due diligence" in processing requests. See id. § 552(a)(6)©).

In this case, an *Open America* stay is warranted because the FBI has demonstrated due diligence in processing its requests and reasonable progress in reducing its backlog.  In addition, even if the Court were to find that the increases in requests were predictable, the FBI would still be entitled to a stay because of its progress in reducing its backlog.  Since the FBI usually receives a large number of FOIA/Privacy Act requests each year, RIDS already faces a great deal of pressure to process and respond to the requests.  Moreover, the number and complexity of the requests has increased significantly over the past year.  Second Hardy Decl., ¶ 28.  Until just this

year, the FBI has been reducing its backlog of request even as there has been an increase volume and complexity of the requests, along with the increased burden of multiple litigation deadlines. Despite the heightened burdens currently on RIDS, the FBI is still processing FOIA requests – including the 81 submitted by the Plaintiff – in a reasonable amount of time.  The FBI has been inundated with an increasing number of FOIA requests over the past few years, as well as an increasing number of those requests that are administratively complex and thus take longer to process.  Decl. ¶¶ 26, 29, 35.

When an agency shows an unanticipated increase in the number of FOIA requests it has received, courts weigh that showing heavily in favor of granting an *Open America* stay.  In *Nat'l Sec. Archive*, the court held that the Agency had demonstrated exceptional circumstances based on a showing that the number of FOIA requests had increased significantly in recent years.  770 F. Supp.2d at 9.  Also, in *Elec. Frontier*, the Court granted the stay for the same reason, noting that "the Record Section's workload has increased at the same time it experienced the decrease in its resources."  563 F. Supp.2d at 194.

Likewise, here, the FBI has demonstrated a nearly 15% increase in its average monthly FOIA and Privacy Act requests from FY 2011 to FY 2012, in addition to a rapid increase in requests over the past few years.  Decl. ¶ 29.  Considering that the FBI typically processes over 17,000 of these requests per year, the increase is a substantial tax on the FBI's limited resources to process the requests.  Second Hardy Decl., ¶ 6; *see also Elec. Frontier*, 563 F. Supp.2d at 194. The FBI has demonstrated an actual and substantial increase in its FOIA requests that, combined with other factors, warrants an *Open America* stay.  *See* 770 F. Supp.2d at 9.

Additionally, litigation deadlines in unrelated cases are monopolizing RIDS personnel and resources, and the FDPS is scheduled to be updated, which will impede the processing of FOIA requests.  In *Gov't Accountability*, the court noted that the constraint placed on an agency as a result of court-mandated document productions was an important factor, but found that the agency had failed to demonstrate with specificity that it had come under increased burdens resulting from litigation.  568 F. Supp.2d at 61.  By contrast, in *Nat'l Sec. Archive*, the court held that the Securities and Exchange Commission had demonstrated exceptional circumstances based in part on a showing that the SEC had to process "tens of thousands of documents" due to obligations stemming from other litigation.  770 F. Supp.2d at 9.

Here, in addition to its high volume of FOIA requests that need to be processed, the FBI is currently a defendant in 120 FOIA lawsuits, placing increasingly high demands on RIDS for the expedited processing and release of records.  Second Hardy Decl., ¶ 32. Since the same RIDS personnel work on existing FOIA and Privacy Act requests as well as document production for litigation, RIDS' resources are constrained when it is involved in a large number of lawsuits. Decl. ¶ 32.  Within the next year, RIDS must process and release well over 100,000 documents pursuant to court orders in ongoing litigation.  *Id.*, ¶ 32(a)-(f).  That number far exceeds the "tens of thousands" of documents defendant was required to produce based on other litigation in *Nat'l Sec. Archive*, where the court found that the added burden weighed heavily in favor of a stay. *See* 770 F. Supp.2d at 9.  In addition to the litigation burden, the scheduled update to the FDPS – which will further streamline an already complex and efficient system – will cause a slowdown in processing for nearly a month, one week of which the system will be down entirely.  *Id.*, ¶ 31.

Furthermore, the FBI's "first-in, first-out" policy has been "adopted by the D.C. Circuit as

-17-

a sufficient showing of due diligence." *Edmond*, 959 F. Supp. 1, 3 (D. D.C. 1997) (citing *Open America*, 547 F.2d at 614-16).   In addition to the general due diligence requirement, an agency must also exercise due diligence specifically with respect to the FOIA requests at issue in order to qualify for an *Open America* stay.  *See Gov't Accountability*, 568 F. Supp.2d at 64.  Here, the FBI has invested in a three-track, first-in, first-out system to expedite its FOIA requests as quickly as possible.  Second Hardy Decl. ¶ 7(a).  This process more than qualifies for general due diligence, as the FBI has taken additional steps to expedite processing in addition to the standard first-in, first-out processing system.  The meticulous process employed by the FBI ensures that FOIA requests are processed quickly and efficiently, despite the high volume of requests and the line-by-line review of documents required because of security concerns.  *Id.*, ¶ 6.

The FBI has also shown due diligence, specifically with regard to Plaintiff's FOIA requests at issue here.  The approximately 349,000 documents potentially responsive to Plaintiffs 81 requests place all of the requests in the "large queue," which increases the processing time as RIDS cross-references and classifies/de-classifies the responsive documents.  *Id.*, ¶ 7(a)(ii).  To date, approximately 2,500 documents responsive to Plaintiff's.  *Id.* ¶ 23.

Finally, the FBI has respectfully proposed a notification provision that would require it to file processing progress status reports that would enable the Court to be on notice of progress that is being made with the goal that the FBI would make a onetime production after it has been able to review all documents for their interrelatedness.  *Id.* ¶ 38.

## CONCLUSION

For the reasons set forth above, the FBI respectfully requests that the Court grant its

motion for an Open America Stay until September 30, 2019.

August 1, 2012                              Respectfully submitted,


                                            RONALD C. MACHEN JR, D.C. BAR # 447889
                                            United States Attorney
                                            for the District of Columbia

                                            DANIEL F. VAN HORN, D.C. Bar # 924092
                                            Acting Civil Chief

                                            By:_____/s/_____
                                            KENNETH ADEBONOJO
                                            Assistant United States Attorney
                                            Judiciary Center Building
                                            555 4th Street, N.W. – Civil Division
                                            Washington, D.C.  20530
                                            (202) 514-7157