# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN NOAH SHAPIRO,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>U.S. DEPARTMENT OF JUSTICE,  )<br>  )<br>  Defendant.  )<br>  ) | Civil Action No. 12-CV-313 |

## *IN CAMERA, EX PARTE* DECLARATION OF MICHAEL A. CLANCY

I, Michael A. Clancy, hereby declare as follows:

(1)  I am the Deputy Assistant Director ("DAD") for Operations Branch II of the Counterterrorism Division ("CTD"), Federal Bureau of Investigation ("FBI"), a position that I have held since May 2012. I entered on duty as a Special Agent with the FBI in March 1991. Upon completion of New Agents Training, I was assigned to the Albany Field Office, where I investigated Violent Crimes, Drug Trafficking Organizations, and Organized Crime. I also served as an Operator and Team Leader on the SWAT Team, a Defensive Tactics Instructor, and a Firearms Instructor. In 1999, I was promoted to Supervisory Special Agent ("SSA") and detailed to the Central Intelligence Agency's Crime and Narcotics Center. Following this one year assignment, I reported to FBI Headquarters as an SSA in the Organized Crime Section. In 2002, I was assigned to the Houston Field Office, where I was responsible for the Texas City

*THIS DOCUMENT IS FOR OFFICIAL USE ONLY AND CONTAINS
LAW ENFORCEMENT SENSITIVE INFORMATION*

1

Resident Agency, with responsibility for all investigations. Following this assignment, I served as an SSA on a counterterrorism squad in Houston, and also served as the Program Coordinator for a 130 member Joint Terrorism Task Force. In 2007, I was promoted to Assistant Section Chief of the Strategic Information and Operations Center, and returned to FBI Headquarters. Two years later, I was selected as Assistant Special Agent in Charge of the Richmond Field Office, with responsibility for all national security matters. In 2010, I was promoted to Section Chief in CTD with responsibility for the National Threat Center Section. This assignment led to my selection as Section Chief of the Domestic Terrorism Operations Section in CTD. In January 2012, I was selected as Special Assistant to the National Security Branch Executive Assistant Director, which is the position I held immediately prior to my current assignment. Prior to entering on duty as a Special Agent, I was a trial attorney in Boston, where I practiced criminal law and civil litigation for five years.

(2)     The primary mission of CTD is to help our nation prevent acts of terrorism against the United States and United States targets and to eliminate terrorists' ability to operate so people live without fear of terrorism. CTD accomplishes this by leading law enforcement and domestic intelligence efforts to defeat terrorism. CTD's top investigative priorities are as follows:

- to detect, disrupt, and dismantle terrorist sleeper cells in the United States before they act;
- to identify and prevent acts of terrorism by individuals with a terrorist agenda acting alone;
- to detect, disrupt, and dismantle terrorist support networks, including financial support networks;

- to enhance our capability to quickly ascertain the reliability, implications and details of terrorist threats and to improve our capacity to disseminate threat-related information to local, state, and federal agencies, and to the private sector as needed; and
- to enhance our overall contribution to the U.S. intelligence community and to senior policy makers in government by providing timely and accurate in-depth analysis of the terrorist threat and other information of value on an on-going basis.

(3) Among its several programmatic responsibilities, CTD manages the FBI's Domestic Terrorism Operations Section ("DTOS"), the mission of which is to identify, prevent, and defeat terrorist operations before they occur, and in the event of an act of terrorism, to execute the FBI's statutory investigative responsibilities and fulfill its role as the Lead Federal Agency for crisis response, functioning as the on-scene manager for the U.S. Government. Within DTOS, the Domestic Terrorism Operations Units ("DTOU I" and "DTOU II"), fulfill the FBI's DT program mission by supporting FBI field offices in pro-actively investigating and countering the activities of persons who or organizations which, without foreign direction, conspire or engage in criminal activity to effect political or social change in the United States and its territories. This mission is accomplished by providing administrative and investigative oversight to ensure DT investigations comply with appropriate Bureau and Departmental guidelines and regulations.

(4) The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(5) I have reviewed the Second Declaration of David M. Hardy in this case ("2nd Hardy Declaration"). I have also been made aware of the prolific nature of the numerous

Freedom of Information Act ("FOIA")/Privacy Act requests filed by Mr. Ryan Noah Shapiro, through which he seeks a significant volume of information regarding the FBI's investigative efforts in the animal rights extremism arena. The purpose of this declaration, which is being submitted as an *in camera, ex parte* supplement the 2nd Hardy Declaration, is to provide the Court with a backdrop of the animal rights extremism movement and the FBI's DT program, and to explain the significant deleterious effects that releasing information responsive to Mr. Shapiro's requests at issue in this litigation will have on the FBI's on-going efforts to investigate and combat domestic terrorism in the United States.

[LES-start] *REDACTED*

(6) *REDACTED*

(7) *REDACTED*[1]

(8) *REDACTED*

(9) *REDACTED*[2] *REDACTED*[3]

---

[1] The Animal Enterprise Terrorism Act ("AETA") of 2006, which amended the Animal Enterprise Protection Act of 1992, makes it a federal crime to intentionally damage or cause the loss of real or personal property (including animals or records) used by an animal enterprise; to intentionally damage or cause the loss of real or personal property of people or entities that have relationships with or engage in transactions with animal enterprises; to intentionally place a person in reasonable fear of his/her death or serious bodily injury, or the death or serious bodily injury of his/her spouse, intimate partner, or immediate family through threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; and to conspire or attempt to do any of these actions. 18 U.S.C. § 43(a).

[2] [LES-start] *REDACTED* [LES-end]

[3] [LES-start] *REDACTED* [LES-end]

*THIS DOCUMENT IS FOR OFFICIAL USE ONLY AND CONTAINS*
*LAW ENFORCEMENT SENSITIVE INFORMATION*
4

(10) *REDACTED*

(11) *REDACTED*

(12) *REDACTED* [LES-end]

### Shapiro FOIA/Privacy Act Requests

(13)   I have been advised that in the course of the last several years, Mr. Shapiro has submitted approximately 491 FOIA/Privacy Act requests to the FBI related to animal rights extremism, individuals, organizations, incidents, and publications. I further understand that Mr. Shapiro's stated purpose for his prolific request history is to obtain information in furtherance of his research for his PhD dissertation at the Massachusetts Institute of Technology ("MIT"). The FBI has learned that the topic of Mr. Shapiro's PhD thesis is "disputes over animals and national security from the late nineteenth century to the present," with a focus on "the substantial role played by federal law enforcement agencies in conflicts over animal use and protection" and an exploration of "the nature and evolution of federal law enforcement agencies' understanding and handling of the animal rights and animal protection movements from the Cold War era to the present." *See* Docket ("Dkt.") No. 13 (First Amended Complaint). **[LES-start]** *REDACTED*

*REDACTED*

(14) *REDACTED*

(15) *REDACTED*

(16) *REDACTED*

(17) *REDACTED*

*REDACTED*

(18)   *REDACTED*

(19)   *REDACTED*

(20)   *REDACTED*[4]

(21)   *REDACTED*

(22)   *REDACTED* [LES-end]

(23)   The 2nd Hardy Declaration, ¶¶ 10 – 22, describes the systematic manner in which the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD") has searched for records responsive to Mr. Shapiro's requests, as well as the records systems it has searched to date. Through the searches described in Mr. Hardy's declaration, RIDS has located a substantial number of records which are potentially responsive to Mr. Shapiro's numerous requests.

(24)   [LES-start] *REDACTED*

(25)   *REDACTED*

(26)   *REDACTED*

(27)   *REDACTED*

(28)   *REDACTED*

(29)   *REDACTED*

---

[4] *REDACTED*

*THIS DOCUMENT IS FOR OFFICIAL USE ONLY AND CONTAINS*
*LAW ENFORCEMENT SENSITIVE INFORMATION*

       A.)   *REDACTED*

       B.)   *REDACTED*

       C.)   *REDACTED*

(30)  *REDACTED*

(31)  *REDACTED*

       A.)   *REDACTED*

       B.)   *REDACTED*

       C.)   *REDACTED*

(32)  *REDACTED*

*REDACTED*

(33)  *REDACTED*

*REDACTED*

(34)  *REDACTED* [LES-end]

## CONCLUSION

(35)    [LES-start] *REDACTED* [LES-end] the importance of coordinating responses to Mr. Shapiro's numerous FOIA/Privacy Act requests rather than making piecemeal releases over the course of several years is a key factor driving the the FBI's public request for a stay until September 30, 2019 to allow it to complete processing of the entire collection of documents.

**[LES-start]** *REDACTED* **[LES-end]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of August, 2012.

*[signature]*
MICHAEL A. CLANCY
Deputy Assistant Director
Counterterrorism Division
Federal Bureau of Investigation
Washington, D.C.

*THIS DOCUMENT IS FOR OFFICIAL USE ONLY AND CONTAINS LAW ENFORCEMENT SENSITIVE INFORMATION*