UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN NOAH SHAPIRO** )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>**DEPARTMENT OF JUSTICE** )<br>)<br>Defendant. )<br>) | Civ. A. No. 12-313 (BAH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Department of Justice ("Defendant" or "FBI"), by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of its' Motion for Summary Judgment.

**INTRODUCTION AND SUMMARY**

The only issue on remand from the D.C. Circuit in this thirteen-year-old case, brought under the Freedom of Information Act, 5 U.S.C. 552, *et seq*. ("FOIA"), is the narrow one of whether, at the time they were conducted in this case more than a decade ago, the FBI's searches were reasonably calculated to capture records regarding individuals mentioned in FBI surveillance. The D.C. Circuit concluded that "[t]he FBI's declarations do not explain how the ACS search conducted in this case would have revealed electronic surveillance 'mentions' if Bureau field offices omit those references from ELSUR indices." *Shapiro v. Dep't of Justice*, 40 4th 609, 614-15 (D.C. Cir. 2022). As set forth in the Declaration of Joseph E. Bender, *see* Exhibit A ("Bender Decl."), indexing of individuals *mentioned* in FBI surveillances is "done at

1

the discretion of FBI investigators when information is deemed of sufficient significance to warrant future retrieval . . . [and] 'mentions' are not a category of individual typically considered for indexing under the FBI's current procedures." *Id*. "However, if a field office at any point further determined an investigative interest and indexed individuals who were 'mentions,' then their names would be contained in the ELSUR indices, and thus accessible through searches of the [Central Records System ("CRS")].  If 'mentioned' individuals were not indexed in the CRS, the FBI has no further method of searching for ELSUR material related to those individuals." *Id*. Given these parameters, the FBI's search of the CRS using its index, which "interfaces" with the FBI's surveillance records, was reasonably calculated to return responsive records about "mentions."  Therefore, summary judgment is warranted because all files likely to contain responsive materials were searched and therefore, the FBI is entitled to judgment as a matter of law.

## BACKGROUND

Of the Court's 107-page Memorandum Opinion, *see* ECF No. 127 ("Memo. Op."), from which Plaintiff appealed, the D.C. Circuit remanded on only one issue – records of "those related to individuals 'mentioned' in monitored communications but not directly targeted for surveillance." *Shapiro v. DOJ*, 40 F.4th 609, 613-15 (D.C. Cir. 2022).  The Circuit Court found that because "[t]he FBI's declarations d[id] not explain how the ACS search conducted in this case would have revealed electronic surveillance "mentions" if Bureau field offices omit those references from ELSUR indices[,]" a limited remand [was] appropriate." *See Shapiro*, 40 F.4th at 614-15.

The "FBI maintains 'Electronic Surveillance ('ELSUR') Indices, a separate system of records from the [Central Records System] []'. . . [which] include[s] 'individuals who were the targets of surveillance, other participants in monitored conversations and the owners, lessees, or licensors of the premises where the FBI conducted the electronic surveillance.'" *Id*. Information from both ELSUR and the CRS are indexed and retrieved via index searches of the FBI's two case management systems: ACS and Sentinel. *Id*. "ACS searches . . . equate to searches of the ELSUR indices." *Id*. In other words, the FBI "searched its ELSUR indices *through* ACS [emphasis in original]." *Id*.; *see also* Bender Decl. at 3 ¶ 6.

"Electronic surveillance is an investigative technique conducted in predicated investigations, and as a result, indexing is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant future retrieval." *Id*. at 4-5 ¶ 9. "'mentions' are not a category of individual typically considered for indexing under the FBI's current procedures. However, if a field office at any point further determined an investigative interest and indexed individuals who were 'mentions,' then their names would be contained in the ELSUR indices, and thus accessible through searches of the CRS." *Id*. "If 'mentioned' individuals were not indexed in the CRS, the FBI has no further method of searching for ELSUR material related to those individuals." *Id*.

## STANDARD OF REVIEW

a.  **General Summary Judgment Standard**

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party

3

may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

      b.      **Summary Judgment Standard as Applied to FOIA Cases**

FOIA cases are appropriately resolved at summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. Nat'l Sect. Agency*, 608 F.2d 1381, 1384 (D.C. Cir. 1979). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden. The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

4

An agency may satisfy the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence, which show that the documents in question were produced or are exempt from disclosure. *Hayden*, 608 F.2d at 1384; *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pub. Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## ARGUMENT

**The FBI's ELSUR Search through ACS was Reasonably Calculated to Capture 'Mentions'**

Federal agencies, upon receiving a FOIA request, are "required to perform more than a perfunctory search" to identify potential responsive records. *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Instead, the agency bears the burden of demonstrating that it "made a 'good faith effort to conduct a search using methods which can be reasonably expected to produce the information requested.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015); *see also Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). To meet this burden, the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325

(D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'" *Truitt*, 897 F.2d at 542 (quoting *Weisberg v. U.S. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). While agencies have a duty to construe FOIA requests liberally, *Nation Magazine*, 71 F.3d 885, 890 (D.C. Cir. 1995), FOIA requires only that the agency conduct a reasonable search tailored to the "four corners of the request," *Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).

At the summary judgment stage, an agency may meet this burden by submitting a "'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Ancient Coin Collectors Guild*, 641 F.3d at 514 (quoting Valencia – Lucena, 180 F.3d at 326). Such an affidavit must "'explain in reasonable detail the scope and method of the search conducted by the agency.'" *See Morley*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). "Agency affidavits – so long as they are 'relatively detailed and non-conclusory' – are 'accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *see also DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015). Only where "a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,'" should summary judgment be denied. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C.

Cir. 2003) (quoting *Valencia-Lucena*, 180 F.3d at 326); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017) (same).

The adequacy of a FOIA search is judged not by the results of an agency's search but by the appropriateness of the agency's search methods. *Iturralde*, 315 F.3d at 315 (citations omitted). Thus, a search is not automatically rendered inadequate by an agency's failure to locate a specific document, *id.*, nor by an agency's refusal to take every step desired by a requester, *Wright v. Admin. for Children and Families*, Civ. No. 15-218 (BAH), 2016 U.S. Dist. Lexis 140314, 2016 WL 5922293, at *6 (D.D.C. Oct. 11, 2016) (citing *Valencia-Lucena*, 180 F.3d at 325). Agencies are permitted to tailor search terms for the requested information in accordance with their own internal procedures for tagging or labeling documents. *See Voinche v. FBI*, 412 F. Supp. 2d 60, 66 (D.D.C. 2006). "The law is clear that FOIA does not provide requesters with a right to demand 'an all-encompassing fishing expedition' of files in every office within an agency." *Cause of Action v. IRS*, Civ. No. 13-0920 (ABJ), 253 F. Supp. 3d 149, 2017 U.S. Dist. Lexis 80516, 2017 WL 2304318, at *8 (D.D.C. May 25, 2017) (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002)).

The FBI's search in this case complied with this Circuit's standards. The D.C. Circuit's limited remand was for the FBI to explain how the ACS search conducted in this case would have revealed the names of individuals mentioned during monitored conversations "*if* Bureau field offices omit those references from ELSUR indices" [emphasis added]. *See Shapiro*, 40 F.4th at 614. There is no issue that the names of monitored subjects by both FBI Headquarters or FBI Field Offices since January 1, 1960, were indexed within, and searchable by, ACS at the time of the searches conducted in this case. *See* Bender Decl. at 3-4 ¶ 7. Neither is it

7

controverted that "ACS interface[s] with the ELSUR indices such that the FBI's searches of ACS would have also located all responsive ELSUR material in this case," consequently, a separate search of the ELSUR indices is unnecessary. *Id*. ¶ 8. "The ELSUR indices include records of . . individuals identified as participants of monitored/recorded conversations." *Id*. at 4 ¶ 8. Although "mentions" are not a category of individuals considered for indexing under the FBI's current procedures, if a field office at any point indexed individuals who are 'mentions,' then their names would be contained in the ELSUR indices, and thus accessible through searches of the CRS via ACS. *Id*. at ¶ 9. Thus, because the search in this case encompassed both main files and "references" or "mentions," "[t]o the extent that any ELSUR records indexed to Plaintiff's requested subjects exist, they would have been located within the scope of the FBI's ELSUR search." *Id*. ¶ 10.

## CONCLUSION

Because the FBI has made a reasonable search likely to contain responsive materials for "mentions," summary judgment for the FBI is warranted.

May 19, 2023                                              Respectfully submitted,

                                                          MATTHEW M. GRAVES, D.C. Bar #481052
                                                          United States Attorney

                                                          BRIAN P. HUDAK
                                                          Chief, Civil Division

                                                          By:      /s/
                                                          KENNETH ADEBONOJO
                                                          Assistant United States Attorney
                                                          Judiciary Center Building
                                                          601 D Street, N.W. – Civil Division
                                                          Washington, D.C.  20530
                                                          Telephone: (202) 252-2562