UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN NOAH SHAPIRO<br>　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE<br><br>　　Defendant. | Case No. 1:12-cv-00313-BAH |

## FIRST DECLARATION OF JOSEPH E. BENDER, JR.

I, Joseph E. Bender, Jr., declare as follows:

1. I am currently serving as the Acting Section Chief (A/SC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I have served in this capacity since March 6, 2023. When not serving as the A/SC, I am an Assistant Section Chief (ASC) in RIDS and have served in that position since December 2020. I joined the FBI in October 2003 and, prior to my current position, I was an Acting ASC in RIDS from June 2020 to December 2020; Unit Chief, RIDS National Security Unit, from January 2017 to June 2020; and an Assistant General Counsel (2003-2006) and Unit Chief (2006-2017), FBI Office of the General Counsel (OGC), National Security and Cyber Law Branch. In those capacities, I provided legal support to operational units of the FBI's National Security Branch. Prior to joining the FBI, I served as a trial attorney in the U.S. Department of Justice, Tax Division, Southern Criminal Enforcement Section. In that role, I participated in federal criminal enforcement prosecutions. I am an attorney licensed in North Carolina and the District of Columbia.

2. In my official capacity as A/SC of RIDS, I supervise approximately 238 FBI

1

employees, supported by approximately 103 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA) as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act (PA) of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiff's requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am familiar with the FBI's handling of the FOIA and Privacy Act requests represented by the 81 request numbers identified in Plaintiff's First Amended Complaint. *See* Docket (Dkt.) No. 13.

4. This is my first declaration in this case. It supplements and incorporates by reference the information previously provided by prior Section Chief David Hardy in his first declaration of May 12, 2012, *see* Dkt. No. 9-1, his second declaration of July 31, 2012, *see* Dkt. No. 17.1, his third declaration of May 24, 2013, *see* Dkt. No. 49-1, his fourth declaration of January 23, 2015, *see* Dkt. No. 65-1, his fifth declaration of February 6, 2015, *see* Dkt. No. 68, his sixth declaration of May 7, 2015, *see* Dkt. No. 70, his seventh declaration of August 6, 2015, *see* Dkt. No. 71, his eighth declaration of November 15, 2015, *see* Dkt. No. 72, his ninth

declaration of February 4, 2016, *see* Dkt. No. 73, his tenth declaration of May 3, 2016, *see* Dkt. No. 75, his eleventh declaration of August 2, 2016, *see* Dkt. No. 76, his twelfth declaration of November 4, 2016, *see* Dkt. No. 77, his thirteenth declaration of February 1, 2017, *see* Dkt. No. 78, his fourteenth declaration of April 28, 2017, *see* Dkt. No. 79, his fifteenth Declaration of October 22, 2018, *see* Dkt. No. 97-3, his sixteenth Declaration of August 2, 2019, *see* Dkt. No. 113-1, his *in camera, ex parte* Declaration filed on or about August 1, 2019, the first Declaration of Section Chief Michael G. Seidel of August 14, 2020, *see* Dkt. No. 131, his second Declaration of September 10, 2020, *see* Dkt. No. 135, and his *in camera, ex parte* Declaration filed September 11, 2020. In its Opinion, the United States Court of Appeals for the District of Columbia Circuit remanded the case for the FBI to further explain its search for electronic surveillance "mentions" (USCA Case No. 20-5318, filed July 15, 2022).

5. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment.

## THE FBI'S ELECTRONIC SURVEILLANCE (ELSUR) INDICES AND SEARCHES

### The FBI's Previous ELSUR Searches

6. The FBI has conducted numerous searches in response to Plaintiff's requests, involving requests for information about 64 individuals, organizations, incidents, or publications related to animal rights extremism. As detailed in the Second Hardy Declaration, the FBI searched both its Central Records System (CRS) through the Automated Case Support (ACS) system for both main and reference entries and separately searched the ELSUR indices for Plaintiff's requested subjects (ECF No. 17-1, ¶¶ 15-21).[1]

---

[1] The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the

3

## THE ELSUR INDICES

7.  As the FBI discussed in the Sixteenth Hardy Declaration, the FBI's previous practice of conducting separate searches of the ELSUR indices was redundant, as ACS interfaced with the ELSUR indices such that the FBI's searches of ACS would have also located responsive ELSUR material in this case that was indexed to a requested subject (ECF No. 113-1, ¶ 115). The names of monitored subjects by FBI Headquarters or FBI Field Offices since January 1, 1960 were indexed in case files, and searchable within ACS at the time of the searches conducted in this case.

8.  The ELSUR indices include records of (a) targeted individuals and entities of electronic surveillance pursuant to court order, consensual monitoring, or other authority; (b) owners, lessors, or licensors of premises where the FBI conducted electronic surveillance; (c) and individuals identified as participants of monitored/recorded conversations.

## ELSUR "MENTIONS"

9.  In the Second Hardy Declaration, the FBI detailed its inclusion in the ELSUR indices of individuals whose names were mentioned during monitored conversations, or "mentions" (ECF No. 17-1, ¶ 18). Electronic surveillance is an investigative technique conducted in predicated investigations, and as a result, indexing is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant future retrieval. As described *supra*, "mentions" are not a category of individual typically considered for indexing under the FBI's current procedures. However, if a field office at any point further determined an investigative interest and indexed individuals who were "mentions," then their

---

fulfillment of its administrative and personnel functions. ACS is a consolidated case management system within the CRS accessible by all FBI offices that allows FBI personnel to search for and locate indexed CRS records.

names would be contained in the ELSUR indices, and thus accessible through searches of the CRS. If "mentioned" individuals were not indexed in the CRS, the FBI has no further method of searching for ELSUR material related to those individuals.

10. As discussed in ¶ 6, *supra*, the FBI conducted searches of the CRS for all Plaintiff's requested subjects. To the extent that any ELSUR records indexed to Plaintiff's requested subjects exist, they would have been located within the scope of the FBI's CRS search. Thus, the FBI's search was complete and adequate, and would have accounted for responsive indexed ELSUR records, to include any indexed ELSUR "mentions" that may exist.

## CONCLUSION

11. The FBI performed adequate and reasonable searches for responsive records, to include responsive ELSUR records indexed to Plaintiff's requested subjects.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __16th__ day of May 2023.

JOSEPH E. BENDER, JR.
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia