DOCUMENT RESUME

*Released* *1/16/17 &*

04618 - [B0024921] (~~Restricted~~)

FBI Taking Actions to Comply Fully with the Privacy Act.
GGD-77-93; B-179296. December 26, 1977. 18 pp. + 7 appendices
(88 pp.).

Report to Rep. Richardson Preyer, Chairman, House Committee on
Government Operations: Government Information and Individual
Rights Subcommittee; by Elmer B. Staats, Comptroller General.

Issue Area: Federal Records Management (1400).
Contact: General Government Div.
Budget Function: Law Enforcement and Justice: Federal Law
    Enforcement and Prosecution (751); General Government:
    General Property and Records Management (804).
Organization Concerned: Federal Bureau of Investigation;
    Department of Justice.
Congressional Relevance: House Committee on Government
    Operations: Government Information and Individual Rights
    Subcommittee; House Committee on the Judiciary, Senate
    Committee on the Judiciary.
Authority: Privacy Act of 1974 (5 U.S.C. 552).

        Since the enactment of the Privacy Act of 1974, Federal
agencies have been required to report in the Federal Register
all of their systems of records on individuals. The Federal
Bureau of Investigation (FBI) central records system is the main
system under which all investigative, personnel, administrative,
and other records are kept. Information maintained by field
offices and foreign liaison offices is sent to FBI headquarters
to be included in the central records system. The FBI maintains
a general index containing names for future retrieval and other
card indexes, photo albums, control files, and computer
listings.  Findings/Conclusions: As of March 1977, the FBI had
reported 12 systems of records. Until April 1977, descriptions
of the categories of people in the central records system were
general and thus inadequate for public access. Now the notices
in the Federal Register are more specific and provide a better
basis for determining what files the FBI maintains. Information
in some of the indexes could not be retrieved through any
published system. The FBI keeps 239 special indexes, exclusive
of 28 classified indexes. Sixty-three of the indexes at
headquarters and the field offices contained information that
was not fully retrievable; all indexes kept by the foreign
liaison offices contained retrievable information.
Recommendations: The Attorney General should require the FBI
Director to take one of the following actions with respect to
indexes having nonretrievable information: make nonretrievable
information on special indexes retrievable as part of a system
of records already published in the Federal Register; publish a
separate notice in the Federal Register for each nonretrievable
special index; or destroy, when permissible, the information in
special indexes that is not retrievable through a published

system of records. He should also require the FBI Director to issue standard policies and procedures for establishing and handling special indexes to insure compliance with the Privacy Act. (Author/HTW)

04618

RESTRICTED — Not to ~~ ~~~~~ ~~~~~ ~~~ the General
Accounting Office except on ~~ ~~~ ~~ specific approval
by the Office of Congressional Relations.



# REPORT OF THE
# COMPTROLLER GENERAL
# OF THE UNITED STATES

*Released 1/16/78*

# FBI Taking Actions To Comply Fully With The Privacy Act

The FBI uses various indexes to manage and conduct investigations. GAO identified 239 of them at FBI headquarters, field offices, and foreign liaison offices.

Indexes that are part of, and fully retrievable through, the central records system or other published systems of records need not be published separately in the Federal Register.

However, 63 of the indexes were not fully retrievable through a published system of records. The FBI should either

    --separately publish a notice of the existence and character of the individual indexes in the Federal Register,

    --make them fully retrievable as part of a system of records already described in the Federal Register, or

    --destroy nonretrievable information in the indexes.

The FBI said it was taking action to insure that all indexes are maintained in compliance with the Privacy Act.

**GGD-77-93**

**DECEMBER 26, 1977**



**COMPTROLLER GENERAL OF THE UNITED STATES**
WASHINGTON, D.C. 20548

B-179296

The Honorable Richardson Preyer, Chairman
Subcommittee on Government Information
    and Individual Rights
Government Operations Committee
House of Representatives

Dear Mr. Chairman:

In response to a letter dated November 19, 1975, from
the former Chairman of your Subcommittee, this report identi-
fies the indexes of individuals maintained by the Federal
Bureau of Investigation (FBI) for investigative purposes and
discusses the FBI's efforts to comply with the publication
requirements of the Privacy Act of 1974. Subsequently, as
agreed with your office, we did not review indexes used for
administrative purposes, nor did we include in this report
28 classified investigative indexes relating to foreign
counterintelligence.

Our review was delayed by the FBI's reluctance to co-
operate with us without Department of Justice concurrence and
until we reached a formal agreement with the FBI regarding
our access to records. After numerous discussions and ex-
changes of correspondence with the Department of Justice and
the FBI, we were given access in May 1976 to the records nec-
essary to conduct this review. Thereafter, the FBI coop-
erated with us during our review.

The Department of Justice and the FBI were given an op-
portunity to comment on this report. They generally agreed
with our conclusions and recommendations. Their comments
have been discussed in chapter 2 of the report and are in-
cluded in appendix VI.

As arranged with your Subcommittee, unless you publicly
announce its contents earlier, we plan no further distribu-
tion of this report until 10 days after the date of the re-
port. We will then send copies to interested parties and
make copies available to others upon request.

Sincerely yours,

Comptroller General
of the United States

COMPTROLLER GENERAL'S
REPORT OF THE SUBCOMMITTEE ON
GOVERNMENT INFORMATION AND
INDIVIDUAL RIGHTS
COMMITTEE ON GOVERNMENT OPERATIONS
HOUSE OF REPRESENTATIVES

FBI TAKING ACTIONS TO
COMPLY FULLY WITH THE
PRIVACY ACT

## D I G E S T

Since the enactment of the Privacy Act of
1974, Federal agencies have been required
to report in the Federal Register all their
systems of records on individuals.  The
Federal Bureau of Investigation (FBI) had
reported 12 systems of records as of March
1977.

The FBI's central records system is the
main system under which all investigative,
personnel, administrative, and other rec-
ords are kept.  To find out what is in the
central system, the FBI's general index--
3x5 cards containing names for future re-
trieval--must be searched.

Each field office and foreign liaison of-
fice has its own central records system and
a gene  l index to those records.  Most of
the information maintained in these offices
is sent to FBI headquarters to be included
in its central records system, with perti-
nent names placed in the general index.
(See ch. 1.)

In addition to the general index, the FBI
has card indexes, photo albums, control
files, and computer listings, among others.
It uses these special indexes in day-to-day
investigations.  (See ch. 1.)

Until April 1977, the descriptions of the
categories of people in the FBI's central
records system were general and thus in-
adequate for public access.  Now, notices
in the Federal Register describe categories
more specifically and provide a better basis
for determining what files the FBI main-
tains.  The FBI does not need to publish
separate notices of the various indexes,

Tear Sheet.  Upon removal, the report
cover date should be noted hereon.

i

GGD-77-93

unless information in them cannot be fully
retrieved through another published system of
which they are described as a part.  However,
information in some indexes could not be
retrieved through any published system.
These indexes should be separately reported
in the Federal Register, be made retrievable
as part of an already published system of
records, or have nonretrievable information
destroyed when permissible.  (See ch. 2 and
apps. III and IV.)

FBI headquarters, field offices, and for-
eign liaison offices keep 239 special in-
dexes.  (This total does not include 28
classified indexes.)  GAO's review did not
cover indexes used for administrative pur-
poses nor indexes involving only foreign
citizens.  Sixty-three of the indexes at
headquarters and the field offices con-
tained information that was not fully re-
trievable through the general index and
thus not through the central records sys-
tem.  All indexes kept by the foreign li-
aison offices contained retrievable in-
formation.  (See ch. 2.)

The Attorney General should require the FBI
Director to:

--Take one of the following actions with re-
  spect to the indexes having nonretrievable
  information.

  1. Make nonretrievable names and other in-
     formation on special indexes retrievable
     as part of a system of records already
     published in the Federal Register (such
     as the central records system).

  2. Publish a separate notice in the Fed-
     eral Register for each nonretrievable
     special index.

  3. Destroy when permissible the names and
     other information in special indexes
     that are not retrievable through a
     published system of records.

--Issue standard policies and procedures
for establishing and handling special in-
dexes (including major case indexes) to
insure compliance with the Privacy Act.

Because of the problems noted, the FBI
should also study the special indexes
maintained for administrative purposes to
make sure similar problems do not exist.

The Department of Justice and FBI gener-
ally agreed with the findings, conclusions,
and recommendations in this report.  The
FBI is taking action to insure that all in-
dexes being maintained by its headquarters
divisions and field offices are in com-
pliance with the Privacy Act of 1974.  (See
app. VI.)

## C o n t e n t s

Page

DIGEST                                                                    i

CHAPTER

1        HOW AND WHERE THE FBI MAINTAINS RECORDS                          1
         Central records system                                           1
         General index for accessing records                             2
         Indexes used for managing investigative
           activities                                                     2

2        IMPLEMENTING THE PRIVACY ACT OF 1974                             4
         Requirements of the Privacy Act                                  4
         Systems of records published by the FBI                         5
         Problems with record systems reported
           in the Federal Register                                        6
         Some indexes need to be reported in the
           Federal Register or revised                                    9
         Conclusions                                                     14
         Recommendations                                                 16
         Agency comments and actions                                     17

3        SCOPE OF REVIEW                                                 18

APPENDIX

I        November 19, 1975, letter from Chairwoman,
         Government Information and Individual
         Rights Subcommittee of the Committee on
         Government Operations, House of Represen-
         tatives                                                         19

II       Revised notice of FBI's central records
         system in Federal Register, April 28,
         1977                                                             30

III      List of indexes maintained by FBI Headquar-
         ters for investigative purposes                                 33

IV       List of indexes maintained by FBI field
         offices for investigative purposes                              55

V        List of indexes maintained by FBI foreign
         liaison offices for investigative
         purposes                                                       102

VI       December 6, 1977, letter from the Depart-
         ment of Justice                                                104

APPENDIX

|  |  | Page |
|---|---|---|
| VII | Principal officials responsible for administering activities discussed in this report | 106 |

## ABBREVIATIONS

| | |
|---|---|
| DEA | Drug Enforcement Administration |
| ELSUR | electronic surveillance |
| FBI | Federal Bureau of Investigation |
| GAO | General Accounting Office |

## CHAPTER 1

## HOW AND WHERE THE FBI

## MAINTAINS RECORDS

### CENTRAL RECORDS SYSTEM

The Federal Bureau of Investigation (FBI) maintains a central records system at headquarters for its investigative, personnel, applicant, administrative. and general files.  Although it has other record systems, this is the primary and most important one.  Basically it consists of one numerical sequence of subject matter files and an alphabetical index to these files referred to as the general index.  All information on a subject matter or case is included in one file.

To control a file, a numbering system is used to indicate (1) the classification or type of investigative violation or administrative area involved, (2) the individual case file within the category, and (3) the serialization of individual pieces of mail in the file.  For instance, the number 91-200-20 on a piece of mail indicates it is the 20th piece of mail in the 200th case file assigned to the bank robbery (91) classification.

The FBI's central records system had 191 classifications as of May 1, 1977.  Most of them pertain to Federal violations over which the FBI has investigative jurisdiction.  Others include personnel, applicant, and administrative matters.

Each of the FBI's 59 field offices, where investigations are conducted, and its 14 foreign liaison offices 1/ has its own central records system similar to that of headquarters.  Most, but not all, of the information kept at the field and foreign liaison offices is referred to headquarters and therefore filed in the central records system.

Headquarters' central records system contains about 6 million files or separate cases.  The FBI does not maintain statistics on the number of case files or index cards maintained by the field offices.

_____

1/In May 1977, the FBI closed ne foreign liaison office, thus reducing the total to 13.

## GENERAL INDEX FOR ACCESSING RECORDS

The key to the files at headquarters and in the field and foreign liaison offices is the general index. It consists of alphabetically filed 3x5 index cards on various subject matters, primarily names of individuals. The cards usually contain information such as name, file number, birth place and date, sex, race, address, and social security number. The general index must be searched to determine what information, if any, the FBI has in its central records system and whether it is at headquarters or in the field.

Upon receiving a request under the Freedom of Information Act or Privacy Act, the FBI searches the general index to the central records system to determine if the requested information is maintained. Other systems of records reported by the FBI in the Federal Register would be searched only if specifically requested.

Index cards are created and placed in the general index only for information considered pertinent for future retrieval. The names of the subjects and victims involved in FBI investigations are also placed in the general index. However, not all the names of persons who furnish information during an investigation are placed in the general index.

The general index to the files at FBI headquarters contains more than 59 million cards. These are estimated to represent 20 million different individuals.

## INDEXES USED FOR MANAGING INVESTIGATIVE ACTIVITIES

In addition to the general index maintained at headquarters and at each field office and foreign liaison office, the FBI uses various indexes to facilitate the way investigations are handled. Primarily, these indexes include index cards, photo albums, and control files.

## Headquarters indexes

Operating divisions use headquarters indexes to retrieve key and frequently used information without a search in the vast central records system. For example, one section maintains a card file on persons involved in the Justice Department's witness protection program--that is, persons who have been given new identities in exchange for testimony against organized crime figures. Another section has a card file on all criminal informants. These indexes generally contain basic identifying information, which is

also contained in the central files.  They also contain FBI
file numbers which a supervisor can use to request a file
from the central records system.  Thus the supervisor does
not first need to have the name searched through the general
index.  This procedure saves time and facilitates investi-
gations.

## Field office and foreign
## liaison office indexes

Indexes are used in the field and foreign liaison of-
fices for the same general management purposes as headquar-
ters indexes.  Although some information in field office in-
dexes originates at headquarters, most involves people who
are of interest only to the field office maintaining the in-
dex.  Some of the photo indexes are used to show pictures to
witnesses or victims of crimes hoping to obtain leads on
suspects.

Field office indexes are in various forms.  Some are not
set up in card or photo format like headquarters, but may in-
stead be copies of correspondence concerning individuals in
a particular subject area.  Some field offices do not catalog
this information in alphabetical order.  They may use other
identifying means, such as telephone number, race, height,
date of birth, or chronological order.

CHAPTER 2

IMPLEMENTING THE PRIVACY ACT OF 1974

Since April 1977 the FBI's public notice of its main records system--the central records system--has sufficiently categorized the information it contains.  To the extent that information contained in an index is retrievable through and part of a published system of records, it is not necessary for the FBI to consider each index a separate system of records that must be individually published as such in the Federal Register.  However, 63 of the 239 indexes 1/ we identified as being maintained by FBI headquarters or field offices for investigative purposes were not fully retrievable from a published system of records.  The FBI should either destroy nonretrievable information when permissible, separately publish a notice for each of these indexes, or make the indexes retrievable as part of an already published system of records (such as the central records system).

REQUIREMENTS OF THE
PRIVACY ACT

The Privacy Act of 1974 requires that agencies "publish in the Federal Register at least annually a notice of the existence and character of [each] system of records."

The act defines a record as:

"* * * any item, collection, or grouping of information about an individual that is maintained by an agency * * * and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."  5 U.S.C. 552a(a)(4).

It defines a system of records as:

"* * * a group of any records under the control of any agency from which information is retrieved

_____

1/This total does not include 28 classified indexes.  Three of the 28 indexes were not fully retrievable through the central records system.  These 28 indexes relate to FBI foreign counterintelligence investigative responsibilities.

4

by the name of the individual or by some identify-
ing number, symbol, or other identifying particu-
lar assigned to the individual."  5 U.S.C. 552a(a)
(5).

The publication requirement of the Privacy Act has two
basic purposes.  First, it provides notice about Government
records and, second, it describes access procedures.  In gen-
eral, the notice function is met if (1) the public is in-
formed of Government recordkeeping practices about individuals
and (2) individuals are able to make reasonably informed deci-
sions about the likelihood of the existence of records about
themselves.  The description of access procedures must include
an explanation of how an individual can obtain access to rec-
ords pertaining to him or her and how to contest the contents
of those records.  A published notice that properly describes
access procedure is deficient if it fails to inform the
public about the nature of the Government record systems.

While the purpose of the Privacy Act is reasonably
clear, it is more difficult to state precisely what must
be included in the publication notice for any specific
system of records.  The Congress gave agencies considerable
discretion in defining and describing systems of records.

In its guidelines for implementing the Privacy Act
published in the Federal Register on July 9, 1975, the Of-
fice of Management and Budget suggests several factors for
agencies to consider in determining what should be included
in a single system of records.  These include:

--If small groupings of records are treated as separate
  systems, notices and procedures will be required for
  each.  The publication of numerous notices, however,
  may limit informational value.

--If a large complex of records is treated as a single
  system, only one notice is necessary.  But, the notice
  may have to be much more complex.

--A major criterion for determining whether a grouping
  of records constitutes one or several systems is the
  ability of the agency to respond to individual re-
  quests for access to records.

## SYSTEMS OF RECORDS PUBLISHED
## BY THE FBI

The FBI published notices of 12 record systems in the
Federal Register.

1.  The National Crime Information Center.

2.  The FBI central records system.

3.  The Bureau mailing list.

4.  Routine correspondence handled by preprinted form.

5.  Routine correspondence prepared without file yellow.

6.  The electronic surveillance (ELSUR) indices.

7.  The FBI automated payroll system.

8.  The personnel information network system.

9.  The Identification Division records system.

10. Employee travel vouchers and individual record earnings.

11. Employee health records.

12. Time utilization record-keeping system.

<u>PROBLEMS WITH RECORD SYSTEMS
REPORTED IN THE FEDERAL REGISTER</u>

<u>Central records system</u>

The notice for the FBI's central records system itemizes and explains several categories of individuals the system has records on. It also makes reference to the general index for accessing those records. The notice does not list or mention by name specific indexes (such as those discussed below and listed in apps. III through V) which the FBI uses in managing and conducting its day-to-day operations.

The FBI has not published a separate notice for each of those indexes maintained by various headquarters divisions and field office squads for daily use, because it considers them to be part of the headquarters central records system or the central records systems maintained by field offices or foreign liaison offices. According to the FBI, these indexes contain identifying information which duplicates information contained in, and retrievable through, central records. Having separate indexes on location allows those who routinely need related information to access them without the time-consuming search of the general index, which is usually maintained in a central location.

6

The Justice Department has not issued a written
opinion on the legal sufficiency of the central record
system notice published in the Federal Register in August
1975.  In a November 14, 1975, letter, however, a Deputy
Assistant Attorney General, Office of Legal Counsel, listed
several factors that were considered in preparing the notice.
These included (1) the ability to readily retrieve informa-
tion upon request about an individual from the system and
(2) unnecessary duplication of notices.

Most of the indexes we identified were used for the
same general purpose--an investigative aid--and contained
information retrievable through central records.  However,
some indexes contained information which was not retrievable
through central records or any other published system of
records.  These indexes might be treated as separate systems
of records for which separate notices would be appropriate.

In addition to not publishing separate notices of the
various indexes maintained for daily management purposes,
the FBI's August 1975 publication notice of its central
records system--containing most of the information related
to these indexes--was very general.  The system contains
about 6 million files in 191 classifications on about 20 mil-
lion individuals.  Yet, the description of individual cate-
gories included in the central records system was very
broadly stated.  For example, the  principal description for
investigatory records was

> "* * * individuals who relate in any manner to
> official FBI investigations including, but not
> limited to suspects, victims, witnesses, and
> close relatives and associates that are rele-
> vant to an investigation."

On April 28, 1977, subsequent to our analysis, the FBI
expanded its notice in the Federal Register on the central
records system.  (App. II contains a copy of this notice.)
It now contains sufficient information about individual
categories to enable one to more adequately determine what
records the FBI maintains.  But as discussed later in this
chapter, some records were not fully retrievable through
any of the published systems.  These records should be re-
ported in the Federal Register as a separate system of
records, be made retrievable as a part of an already pub-
lished system of records, or have the nonretrievable infor-
mation in them destroyed when permissible.

Other record systems

Most of the other record systems the FBI listed in the Federal Register do not concern the investigative area; therefore, we did not examine them during this review.  The only other published record systems in which we found indexes of an investigative nature were the (1) ELSUR indices, (2) the National Crime Information Center, and (3) the Identification Division records system.

The indexes we identified as being related to the National Crime Information Center and the Identification Division records system were retrievable through the respective systems of which they were a part.  The publication notice for the ELSUR indices, however, lacks some details which would give the public a better idea of what it includes.

The ELSUR index, maintained by FBI headquarters and most field offices, was published as a separate record system in the Federal Register because not all names in the index are retrievable through the general index and central records system.  Although the FBI initiated the ELSUR index in 1966 at the direction of the Department of Justice, three FBI field offices had initiated ELSUR indexes in 1941.

The field offices have been including in their ELSUR index, and reporting to headquarters for inclusion in its index, the names of all persons whose voices have been monitored through an FBI microphone installation or a telephone surveillance since January 1, 1960.  (See app. III, p. 49.) The names of monitored subjects are retrievable through the headquarters or local field office ELSUR index.

Until 1969 field offices were also required to forward for inclusion in the headquarters ELSUR index the names of all persons mentioned during monitored conversations.  Headquarters discontinued this requirement in 1969, but some field offices still make up mention cards for inclusion in their ELSUR index.  Therefore, the names of such persons, to the extent they are maintained in field office ELSUR indexes, are not retrievable through the headquarters ELSUR index--a fact not set forth in the published notice on ELSUR indexes.  The notice does not point out that ELSUR indexes are maintained in field offices which have conducted electronic surveillance since 1960.

## SOME INDEXES NEED TO BE
## REPORTED IN THE FEDERAL REGISTER
## OR REVISED

Of the types of indexes which we identified as being maintained at FBI headquarters, field offices, and foreign liaison offices, several contained some names and information which were not retrievable through the respective central records system or any other published system of records. The FBI should separately publish the name, nature, and character of such index in the Federal Register, destroy nonretrievable information which they contain, or make them fully retrievable through an already published system of records (such as the central records system).

## Fourteen indexes maintained at FBI
## headquarters are nonretrievable

We identified 71 investigative indexes maintained at FBI headquarters by various divisions. Some indexes consist of note cards containing various identifying information, some are computer tapes, and others consist of photo albums containing pictures as well as identifying information. Appendix III contains a listing and brief description of the indexes.

Fourteen indexes were not fully retrievable through the central records system or any other system which the FBI publicized in the Federal Register. These are the index on associates of the Drug Enforcement Administration's (DEA's) class I narcotics violators, the White House special index, and computerized listings of data related to 12 major investigations conducted by the FBI.

### Index on associates of DEA's
### class I narcotics violators

The FBI assists DEA and State and local narcotics control agencies throughout the country by developing and disseminating intelligence data concerning illicit drug trafficking. In November 1976, in connection with this role, DEA supplied FBI headquarters with a computer printout of its class I narcotics violators. These are people known to manufacture, supply, or distribute large quantities of illicit drugs. DEA also supplied a printout of known associates of these class I violators. Information on both the violators and associates was sent by FBI headquarters to all field offices and two major resident agencies.

9

Both FBI Headquarters and field offices included the class I violators in their general indexes. They did not include the violators' associates in the general index, however, because of the lack of (1) sufficient identifying information and (2) any significant investigative interest. The names of associates, along with the corresponding names of violators, are kept on a separate list and are not retrievable through central records.

## White House special index

This index, still actively maintained, was initiated during President Dwight D. Eisenhower's administration to facilitate security checks on White House appointees, staff members, visitors, and guests. When the President is having visitors or guests in or is considering appointments to Government jobs or White House staff, the White House security office usually sends their names to the FBI for security checks. If the person has a file, it is reviewed. Any adverse or derogatory information is reported by memorandum to the White House.

The separate index of persons the White House has an interest in consists of cards with the name, the date the search was made, the type of White House function or position to which appointment was being considered, and the FBI file number, if one exists. Should a search of the general index determine a "no record," a card is prepared for the White House special index indicating this. The names of such persons with no record are not included in the general index and thus are not retrievable through the headquarters central records system.

When the FBI receives a name from the White House, it first searches the special index to see if the subject was checked previously. If he or she was and the central records system contains information on the subject, the FBI can immediately call for the file. Then it has only to determine whether information has been added to the subject's file since the last request from the White House. If nothing was found in a prior name check performed for the White House, the FBI can limit its search to the time period since the last search.

FBI officials gave two reasons for creating a separate index on persons the White House has an interst in. First, many names are referred more than once and, second, the name checks or searches must often be performed quickly--sometimes within an hour.

10

Headquarters computer listings on
major cases contain some
nonretrievable names

For major cases or investigations, the FBI establishes
special indexes to keep track of all the information.  The
President John F. Kennedy assassination, the Patricia Hearst
kidnapping, and the James Hoffa disappearance are examples of
such cases.  Usually the field supervisor of a major case
sets up an index card system to facilitate assigning and
keeping track of investigative leads without having to
search the general index.  The number of major case indexes
we identified in the field offices and the related retrie-
val problems are discussed on pages 13 and 14.

Because of the complexity of some major cases, FBI
heaquarters computerizes certain information to facilitate
its administration.  The field offices submit to headquar-
ters the names of people on whom information is developed in
conjunction with a major case.  They also provide license
plate numbers, evidence, and any other pertinent information.
Headquarters then computerizes the information and usually on
a monthly basis provides the field offices with a printout
for each case.  It shows the names of persons related to the
investigation in alphabetical order, a brief summary of the
information attributed to this person, and a reference to
the location of the information in the headquarters central
records or field office files.  We identified 12 such com-
puter listings.

Although the computer printout is generated as a head-
quarters service to aid the field offices investigating major
cases, copies are maintained at headquarters and used by
supervisors responsible for overseeing such cases.  The
names on the computer listings are often included in the
headquarters general index and thus retrievable through its
central records system.  In some instances the names would
not be considered necessary for future retrieval by head-
quarters.  They would therefore not be included in the head-
quarters general index and thus not be retrievable through
the central records system.  All 12 computerized listings
we identified at FBI headquarters were not fully retriev-
able through a published system of records.

Forty-nine indexes maintained by FBI
field offices are not fully retrievable
through a published system of records

The FBI's notice in the Federal Register indicates that
each field office has its own records system and that not all

11

information at the field office is retrievable at headquarters. Therefore, we surveyed the FBI's 59 field offices to determine (1) what indexes they maintained and (2) whether they maintained information on individuals in any indexes that are not retrievable through the field office general index.

We identified 158 indexes maintained in various forms by the 59 field offices. Appendix IV contains a listing and description of these indexes.

Although a few of the FBI's approximately 495 resident agencies which support the field offices maintain special indexes for investigative purposes, they do not have a central records system or a general index. They generally use the cognizant field office special indexes and central records as needed.

The indexes most often kept by resident agencies are related to fugitive areas and include wanted flyers, identification orders, and check circulars. They are generally retrievable through the cognizant field office general index. One larger resident agency did maintain a couple of the name indexes we identified in several field offices, and this information was retrievable through the appropriate field office's central records system.

The names and basic information in most of the field office indexes we identified are retrievable through a published system of records, namely the general index and central records system of that office. As indicated in appendix IV, however, we identified 49 indexes in the field offices of which some or all of the names and other information were not retrievable through the field office general index and central records system.

For example, not all of the names of persons included in the bank robbery album maintained by some field offices are in the general index, and they would not be retrievable through the field office central records system. The album might contain information furnished by an informant on a person who has never been arrested for bank robbery. It might contain a photo furnished by the local police with some basic identifiers on a person who has been convicted of armed robbery and thus is a potential bank robber.

The information in a few indexes may not be retrievable because of the manner in which it is filed. For instance,

in some field offices the bank robbery album is not filed by name, but by various physical descriptions--usually race, height, and date of birth. A few indexes are also filed by such classifications as telephone number or chronological order. This makes it difficult to retrieve the information based on a request which contains only a name.

The Privacy Act's definition of "system of records" is not specific as to the meaning of the language "* * * retrieved by the name of the individual * * * or other identifying particular assigned to an individual." (Underscoring added for emphasis.) For this reason, we cannot conclude that all indexes containing information retrievable only by physical description, phone number, or chronological order are reportable as a separate system of records even though they are not fully retrievable in the general index. We believe that generally, however, if certain data related to a person is important enough to be placed in a special index, the names are important enough to be included in the general index--thus making them retrievable.

## Major case indexes in some field offices are not retrievable

As discussed earlier, field offices maintain special indexes to administer major cases or investigations. Of the 158 field office indexes, 68 related to major cases with 22 major case indexes containing names which were not fully retrievable through the general index. Major case indexes are included in appendix IV.

The retrieval of major case indexes varied by field office because of different practices. Some offices used a dual card system when placing a name in a major case index-- one card for the special index and one for the general index. Some offices only made up a card for the major case index. Other offices made up cards for the major case index and the general index on those names considered pertinent for future retrieval. In a few major cases having only one index card, the major case index cards that were relevant would be placed in the general index at the conclusion of the case and the rest would be destroyed.

We identified only one major case index that was totally separate from the general index--that of the President Kennedy assassination, Jack Leon Ruby, and Lee Harvey Oswald case. According to the FBI in the Dallas field office, this index is searched in connection with information requests under the

Privacy Act and Freedom of Information Act, and all relevant
names and information on the index have also been reported to
FBI headquarters and included in the headquarters central
records.

### Informant indexes in two field offices are kept separately

In November 1976 FBI headquarters notified its field
offices that they could remove all informant index cards
from the general index if security reasons warranted it.
Two field offices had done so as of February 1977.

The field offices were instructed that separating
their informant cards from the general index would require
searching both indexes to comply with requestes under the
Privacy Act and Freedom of Information Act.  Therefore,
even though the two indexes are physically separated for
security reasons, the FBI considers them to be, and treats
them as, part of the general index.

### All indexes maintained by foreign liaison offices are retrievable

The FBI has 13 liaison offices in foreign countries to
insure a constant and prompt exchange of information and
assistance between foreign law enforcement and security agen-
cies and the FBI.  As with the FBI's field offices, we sur-
veyed the liaison offices to determine the indexes they main-
tained.  We identified only 10 indexes, and all of the names
and information included in them was retrievable through
their general index.  The indexes we identified are listed
and described in appendix V.

### CONCLUSIONS

Because of the lack of descriptive detail, the August
1975 notice in the Federal Register of the FBI's central
records system functioned ineffectively as a public record
of the system's nature and character.  While the notice
provided the public with information to request access to
records, to be more effective it needed to be expanded to
include more descriptive detail about the categories of
individuals on whom records are maintained.  We believe
the expanded notice published in the Federal Register on
April 28, 1977, now contains sufficient information about
the categories of individuals included in the central rec-
ords system to enable an individual to more adequately
determine what records the FBI maintairs.

While a separate notice for each index would also be
consistent with the Privacy Act and could further improve
the FBI's disclosure procedures, the FBI's decision to treat
all its indexes as part of the central records system or any
other published system would be a reasonable exercise of the
FBI's discretion, providing the indexes are retrievable
through the system they are a part of.  As shown in appen-
dixes III and IV, however, 63 indexes are not fully retriev-
able through the headquarters or field office central records
systems or through other published systems.  The FBI should
either publish a separate notice for each of those indexes,
destroy when permissible nonretrievable information in them,
or make the indexes retrievable as part of an already pub-
lished system of records.

Although the publication notice in the Federal Register
lists the ELSUR indices as a separate system of records, it
does not disclose that most field offices maintain an ELSUR
index.  The current notice would be more effective if it were
amended to point this out.  Also, some field offices include
on their ELSUR indexes the names of persons mentioned during
monitored conversations.  Since 1969, however, these names
are not reported to FBI headquarters and thus are not retriev-
able through its ELSUR index.

When FBI officials learned that several indexes we had
identified were not fully retrievable through a published
system of records, they incorporated a procedure to check
the use and status of special indexes as part of the FBI's
periodic inspection of its headquarters divisions, field
offices, and foreign liaison offices.  This procedure has
been in use since January 1977 and includes an evaluation of
whether the indexes are retrievable through the general in-
dex.  If the inspection staff continues to evaluate indexes
as part of its periodic inspections and its findings and
recommendations are enacted, the FBI will be better assured
of being in compliance with the Privacy Act.

In addition to its periodic review of indexes, the FBI
should take action with regard to those indexes that are not
retrievable through a published system of records.  We be-
lieve this can be accomplished by making such indexes re-
trievable as part of an already published system, publishing
a separate notice for each index or destroying when permis-
sible the nonretrievable information they contain.

15

To avoid future discrepancies among field offices regarding retrieval of the same types of indexes, such as the major case indexes, FBI headquarters should issue standard policies and procedures on establishing and handling indexes.

Finally, we believe the FBI should consider conducting a review of the indexes it maintains for administrative purposes, particularly since those indexes were not included in our review, to insure that problems similar to those cited in this report do not exist.

## RECOMMENDATIONS

We recommend that the Attorney General require the FBI Director to:

--Initiate one of the following actions with respect to indexes having nonretrievable information.

    .. Make nonretrievable names and other information on special indexes retrievable as part of a system of records already published in the Federal Register (such as the central records system).

    2. Publish a separate notice in the Federal Register for each nonretrievable special index.

    3. Destroy when permissible the names and other information in special indexes that are not retrievable through a published system of records.

--Issue standard policies and procedures for establishing and handling special indexes to insure compliance with the Privacy Act.

--Amend the current notice in the Federal Register to state that ELSUR indexes are maintained in some FBI field offices as well as at headquarters and that the headquarters ELSUR index and some field office ELSUR indexes contain mention cards.

Because of the problems we noted concerning investigative indexes, we further recommend that the FBI study the special indexes it maintains for administrative purposes to insure that similar problems do not exist.

## AGENCY COMMENTS AND ACTIONS

The Department of Justice and FBI generally agreed with
the findings, conclusions, and recommendations in this re-
port.  (See app. VI.)  They agreed that the Congress needs
t  have detailed knowledge of the FBI's indexes and record-
keeping practices to be in a position to consider appro-
priate legislation.

To insure full compliance with the provisions of the
Privacy Act of 1974, the FBI has instructed all headquarters
divisions and field offices to check all of their indexes
and to take one of the three recommended options to make
their indexes comply with the act.

CHAPTER 3

## SCOPE OF REVIEW

To identify the various indexes the FBI maintains for investigative purposes, we obtained information from FBI headquarters, the 59 field offices, and the 14 FBI foreign liaison offices. Following the identification of the headquarters indexes, we sent a letter to all field offices and foreign liaison offices requesting that they list and explain the indexes they maintain. A second letter was sent in the form of a checklist to be filled out by the field offices and liaison offices. The checklist consisted of all the various indexes, such as photo albums and control files, listed by the field offices in their first response. The checklist response was necessary because of the potential misinterpretation of what an index is. We also had telephonic followup with the field offices on areas needing further clarification and visited four field offices-- Atlanta, Chicago, Jacksonville, and New York--to discuss the indexes they maintained.

We did not include in our review indexes the FBI maintains for administrative purposes. Nor did we include indexes involving only foreign nationals, because only U.S. citizens and aliens admitted for permanent residence are covered by the Privacy Act. Also, we did not evaluate the merits of the indexes.

We analyzed the adequacy of the FBI's publication notice for the central records system and other published systems of records in which we found investigative indexes. We addressed two points: (1) whether the Privacy Act requires that the FBI publish a separate notice for each index it maintains and (2) whether the FBI's notice for the central records system and other systems should provide more details about the categories of information it contains.

BELLA S. ABZUG, N.Y., CHAIRWOMAN
LEO J. RYAN, CALIF.
JOHN CONYERS, JR., MICH.
ROBERT H. MACDONALD, MASS.
JOHN E. MOSS, CALIF.
MICHAEL J. HARRINGTON, MASS.
ANDREW MAGUIRE, N.J.
ANTHONY MOFFETT, CONN.

SAM STEIGER, ARIZ.
CLARENCE J. BROWN, OHIO
PAUL N. McCLOSKEY, JR., CALIF.
225-3741

NINETY-FOURTH CONGRESS

# Congress of the United States

## House of Representatives

**GOVERNMENT INFORMATION AND INDIVIDUAL RIGHTS
SUBCOMMITTEE
OF THE
COMMITTEE ON GOVERNMENT OPERATIONS**

RAYBURN HOUSE OFFICE BUILDING, ROOM B-349-B-C
WASHINGTON, D.C.  20515

November 19, 1975

Honorable Elmer B. Staats
Comptroller General of the United States
U.S. General Accounting Office
441 G Street, Northwest
Washington, D.C. 20548

Dear Mr. Comptroller General:

Enclosed is a copy of an opinion of the American Law Division of the Library of Congress concerning the filing, pursuant to the Privacy Act of 1974, of notice of the existence of Federal Bureau of Investigation systems of records.  The opinion finds that the FBI's "Administrative Index" meets the Privacy Act's definition of a system of records and that the FBI's notice for the Central Records System does not adequately describe that system.

In your statement to the House Judiciary Subcommittee on Civil Rights and Constitutional Rights on September 24, 1975, you mentioned, at p. 20 of your typed statement, that the FBI maintained various "lists of individuals subject to intensified investigative interest because of their leadership roles, potential for violence, or in some cases, organizational affiliation."  You refer specifically to the "Administrative Index" (which is the subject of the Library of Congress opinion) as well as "the Agitator Index", "the Stop Index" and the "Computerized Telephone Number Index".  You also state that the "Key Activist" and the "Key Extremist" programs fall within the category of programs connected with the maintenance of lists of persons.

In view of the opinion that the FBI should separately list the "Administrative Index" in conformity with the requirements of the Privacy Act, and in view of the revelation in your testimony of the existence of these additional lists, I would like the GAO to undertake a

Honorable Elmer B. Staats
November 19, 1975

                                                        Page 2


survey and description of all such lists maintained by the FBI.   I
would like the GAO to determine whether there exist any additional
FBI lists or indexes such as the "Administrative Index" and the others
referred to in your testimony.

    Please have your staff contact Timothy Ingram, the Subcommittee
Staff Director, 225-3741, concerning this request.

                                Sincerely,

                                *Bella S. Abzug* (signature)

                                BELLA S. ABZUG
                                Chairwoman


Enclosure



*Congressional Research Service*

Washington, D.C. 20540

November 11, 1975

To:     House Government Information and Individual Rights
Subcommittee

From:   American Law Division

Subject: Whether Justice Department Provided Notice of Existence of
Security Risk File Adequate to Meet Requirements of "Privacy
Act of 1974."

This will refer to your request of October 29, 1975, in which
you asked whether the Justice Department is required by the "Privacy Act
of 1974" (Pub. L. 93-579, December 31, 1974, 88 Stat. 1896, 5 U.S.C.
sec. 552a) to provide notice in the Federal Register of the existence of
what they describe as an "administrative index" of persons believed to pose
a threat to national security.

The "Privacy Act" requires each agency maintaining a system of
records, among other things not relevant to this report, to publish at
least annually in the Federal Register a "notice of the existence and char-
acter of the system of records" which shall include factors such as the name
and location of the system, categories of individuals whose records are
maintained in the system, categories of records maintained in the system,
routine uses to which the records are put, and the policies and practices
of the agency with regard to storage, retrievability, access, retention and
disposal of the records. 5 U.S.C. §552a(c)(4).

The existence of the "index" was disclosed to the House Civil
Liberties Subcommittee in a memorandum by F.B.I. Director Clarence M.
Kelley declassified and released by the Subcommittee on October 22, 1975.

21

The system   contains the names of more than 1200 persons who were de-scribed as having

> exhibited a willingness or capability of engaging in treason, rebellion, sabotage, espionage, as-sassination of government officials, terrorism, guerilla warfare or other acts which would re-sult in interference with or a threat to the sur-vival of national, state or local government.
> New York   Times, October   23,   1975, p. 13;
> Washington Post, October 24, 1975, p. A2, quo-ting from FBI Memorandum.

The Justice Department did not provide separate notice for this "administrative index" in its annual "Notices of Systems of Records" pub-lished in the Federal Register on August 27, 1975, in accordance with the requirements of Sec. 3(e)(4) of the "Privacy Act" (5 U.S.C. sec. 552 (e) (4)). The Department has claimed that since these records are duplicates of some of the records contained in the larger 'F.B.I. Central Records System," it is not a separate system. It is contended that since notice was given of the central files system from which all security risk records were acquired (see 40 Fed. Reg. 38768, August 27, 1975), the "Privacy Act" notice requirement had been fulfilled and a separate notice need not be given to duplicates of part of the system and the specialized security risk index with which portions of the whole file could be retrieved.

An examination of a description of the types of records involved, the language and history of the "Privacy Act", and the authoritative inter-pretation of that Act provided by the guidelines issued by the Office of

Management and the Budget for implementation of the Act* indicate that
the Justice Department is required by the "Privacy Act" to publish clear
notice of the existence of the system of records listing persons considered
to pose a danger to the national security even though the records com-
prising the system are also included in the noticed "F.B.I. Central Re-
cords System." As will be shown by this memorandum, this list meets
the Act's definition of a system of records which is inadequately described
in the notice for the "Central Records System."

The so-called "index" is comprised of cards on which are printed
the names, background information, file numbers and alleged activity in
which the individual is engaged which provide the rationale for defining
the subject as a security threat. The individual cards would clearly be
"records" under the "Privacy Act" since each one is "a collection, or
grouping of information about an individual that is maintained by an agency,
including but not limited to his...criminal or employment history and that
contains his name, or the identifying number... or other identifying parti-
cular assigned to the individual..." 5 U.S.C. sec. 552a(a)(4). The security
file would also constitute a "system of records" under the Act--"a group

---

*Sec. 6 of the "Privacy Act" requires the Office of Management and Bud-
get to "develop guidelines and regulations for the use of agencies in imple-
menting the provisions of section 552a of title 5, United States Code"
and to "provide continuing assistance to and oversight of implementation
of the provisions of such section by agencies."

of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. sec. 552a(a)(5). Even if the records could only be retrieved from the central file, the existence of an index alone, with which those records involving security risks could be segregated from the larger collection, would constitute a system of records.

Since this information is clearly covered by the "Privacy Act," the crucial remaining issue is whether this system of records is a separate system requiring separate notice or is merely part of the "F.B.I. Central Records Systems." If the records are determined to be only a component of the larger central records, then a determination would have to be made as to whether the published notice adequately described this component.

Although the agencies are given wide discretion in defining what constitutes a separate system, the fact that all of the records in one system were derived from another system does not necessarily mean, as the Justice Department asserts, that the smaller collection of records is not a separate system. The OMB guidelines conclude that

> The purpose(s) of a system is the most important criterion in determining whether a system is to be treated as a single system or several systems for the purposes of the Act. If each of several groupings of agency records is used for a unique purpose or set of purposes, ...each may appropriately be treated as a separate system. 40 Fed. Reg. 28962-28963(July 9, 1975).

The Federal Register notice of the "F.B.I. Central Records System" in which the security system is purported to be included provides some evidence that the security list is distinctive from the other files in the index. The categories of individuals included in the Central system are described as:

> a. Individuals who relate in any manner to official F.B.I. investigations including, but not limited to suspects, victims, witnesses and close relatives and associates that are relevant to an investigation.
>
> b. Applicants for and current and former personnel of the F.B.I.... or persons related to personnel matters.
>
> c. Applicants for and appointees to sensitive positions in the United States Government and persons...considered relevant to the investigation.
>
> d. Individuals who are the subject of unsolicited information, who offer unsolicited information, request assistance, and make inquiries concerning record information, including general correspondence...
>
> e. Individuals, associated with administrative operations or services including...contractors..

Only one of the above categories, "a", would encompass the type of record included in a "security watch system." As can be seen above, category "a" includes a wide range of criminal suspects, convicts, victims and witnesses. The kidnapper, bank robber and their victims and witnesses to their crimes, in most cases, would differ substantially from the 1200 persons who, because of characteristics that the F.B.I. believes make them dangerous to the national security, can be accessed from the central

records for special forms of political surveillance or other treatment distinctive from other types of suspects.

The unique characteristics of the subjects of the national security threat list are emphasized by the origins of this system which clearly demonstrate that it was created for a unique purpose that sets it apart from other criminal or personnel files. Its nucleus was developed prior to 1971 when the F.B.I. maintained a detention list of persons who, under the authority of the "Internal Security Act of 1950," Ch 1024, title II, §100-116, 64 stat. 1019, Sept. 23, 1950, would be subject to incarceration in the event of a national emergency. The Justice Department has claimed that this index was discontinued in September, 1971, after that Act was repealed, but some F.B.I. sources have said that names in the old system, which at its peak contained as many as 15,000 names, were included in the present index. See New York Times, supra. Even though present law no longer provides specific authority for the incarceration of persons thought to pose a national security threat in case of a national emergency, Director Kelley's memorandum to the House Committee stated that the security threat system was maintained and continuously revised and updated to provide "a record of individuals who would merit close investigative attention pending legal steps by the President to take further action" if there was a national emergency.

The hearings, primarily by the Senate Constitutional Rights Subcommittee and the House Government Operations Committee, reports and debate that preceded enactment of the "Privacy Act of 1974" made abundantly clear Congress' concern over the effect of secret files on the rights

of individuals who could not even know that potentially damaging information existed and was being widely disseminated, much less challenge information believed to be erroneous. In the "Privacy Act," Congress specifically found

> in order to protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary and proper for Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies. sec 2(a)(5).

The first purpose of the Act was stated to be to:

> permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by such agencies; sec. 2(b)(1).

For this reason, although many sensitive systems, such as C.I.A. and law enforcement systems, are exempt from requirements such as those permitting an individual to see his own record, no system is exempt from the notice requirements of section 3(e)(4)(B), the requirement that all agencies must report "the categories of individuals on whom records are maintained in the system."

The OMB guidelines clearly recognize the purpose of the notice requirement when they state:

> Agencies should keep in mind that a major purpose of the Act is not the restructuring of existing systems of records, but rather the publicizing of what those systems are and how they are used. 40 Fed. Reg. 28963 (July 9, 1975).

Congress showed particular sensitivity to and concern over records that could be considered to endanger First Amendment rights. See,

for example Senate Judiciary Committee, Subcommittee on Constitutional Rights, Hearings on S. 2318, "The Freedom from Surveillance Act of 1973." 93rd Cong., 2nd Sess., April 9, 10, 1974.   The "Privacy Act" specifically prohibits the maintenance of records "Describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute...or unless pertinent to and within the scope of an authorized law enforcement activity." sec. 3(e)(7).

Even though F.B.I. Director Kelly's memorandum to the House Judiciary Subcommittee denied that subjects were included in the security system solely because of their stated opposition to Government policies or because of their membership in a subversive organization, it is likely that a person's political views or associations would have some influence over whether he was included in the system.   The old security index was reported by the <u>Times</u> to have at one time contained the names of virtually all known members of the Communist Party.   Because of the large number of Communists included in the original system, it is likely that many members of the Communist Party are still included in the system.   While the maintenance of national security file may be justifiable as a law enforcement activity, Congress' sensitivity to this type of political intelligence file would indicate an intention that clear notice be provided of its existence.

While the OMB guidelines would permit "a large complex of records" to be treated as a single system, they specify that the "notice and

the procedures may be considerably more complex" than if each small grouping of records were treated as a separate system. 40 Fed. Reg. 28962(July 9, 1975). The notice given does not provide the necessary specificity. The fact that one could read the notice and not suspect that records are maintained within this system on persons who are under surveillance as security risks shows that the notice does not meet the function of alerting the public to existing systems and of informing Congress so that its regulatory function with regard to such personnel information can be preserved. Since this type of record may be more subject to abuse than most routine personnel files and is clearly distinct from other systems of records included in the Central Records, separate notice would be desirable. As a minimum, the law would seem to require that, if the Justice Department were to continue to treat all these records as a unified system, a much clearer and detailed notice be issued, if not a separate notice.

E. Jeremy Hutton
Legislative Attorney

REVISED NOTICE OF FBI'S

CENTRAL RECORDS SYSTEM

IN THE FEDERAL REGISTER 1/

---

## DEPARTMENT OF JUSTICE

### Office of the Attorney General

[Order No. 724-77]

### PRIVACY ACT OF 1974

#### Systems of Records; Correction

In F.R. Doc. 77–12097 appearing at page 21668 in the issue of Thursday, April 28, 1977, the following paragraph was omitted from the description of the categories of records for JUSTICE/FBI-002, titled "FBI Central Records System."

*The FBI Central Records System—the FBI utilizes a central records system of maintaining its investigative, personnel, applicant, administrative, and general files. This system consists of one numerical sequence of subject matter files, an alphabetical index to the files, and a supporting abstract system to facilitate processing and accountability of all important mail placed in file. Files kept in FBI field offices are also structured in the same manner, except they do not utilize an abstract system.*

Pursuant to the authority vested in me by 5 U.S.C. 552a, the description of categories of records printed below replaces the existing one and is hereby adopted.

Dated: May 11, 1977.

GRIFFIN B. BELL,
*Attorney General.*

---

1/Underscored portion represents what was initially published in the Federal Register on August 27, 1975.

## JUSTICE/FBI—002

**System name:**
FBI Central Records System.
**Categories of records in the system:**
The FBI Central Records System—the FBI utilizes a central records system of maintaining its investigative, personnel, applicant, administrative, and general files which contain both a numerical sequence of subject matter files, an alphabetical index to the files, and a supporting abstract system to facilitate processing and accountability of all important mail placed in file. Files kept in FBI field offices are also structured in the same manner, except they do not utilize an abstract system.

The FBI has 191 classifications used in its basic filing system. They pertain primarily to Federal violations over which the FBI has investigative jurisdiction. However, included in the 191 classifications are personnel, applicant, and administrative matters to facilitate the overall filing scheme. These classifications are as follows (the word "obsolete" following the name of the classification indicates that document or are no longer being filed under this heading):

### CLASSIFICATIONS

1. Training Schools: National Academy Matters; FBI National Academy Applicants
2. Neutrality Matters.
3. Overthrow or Destruction of the Government
4. National Firearms Act; Federal Firearms Act; State Firearms Control Assistance Act; Unlawful Possession or Receipt of Firearms
5. Income Tax.
6. Interstate Transportation of Strikebreakers
7. Kidnaping
8. Migratory Bird Act
9. Extortion
10. Red Cross Act
11. Tax (Other than Income)
12. Narcotics
13. Miscellaneous National Defense Act; Prostitution; Selling Whiskey Within Army Camps (obsolete)
14. Sedition
15. Theft from Interstate Shipment
16. Violation Federal Injunction (obsolete)
17. Veterans Administration Matters
18. May Act
19. Censorship Matters (obsolete)
20. Federal Grain Standards Act (obsolete)
21. Food and Drugs
22. National Motor Vehicle Traffic Act (obsolete)
23. Prohibition
24. Profiteering (obsolete)
25. Selective Service Act; Selective Training and Service Act
26. Interstate Transportation of Stolen Motor Vehicle; Interstate Transportation of Stolen Aircraft
27. Patent Matter
28. Copyright Matter
29. Bank Fraud and Embezzlement
30. Interstate Quarantine Laws (obsolete)
31. White Slave Traffic Act
32. Identification (Fingerprint Matters)
33. Uniform Crime Reporting
34. Violation of Lacy Act (obsolete)
35. Civil Service
36. Mail Fraud
37. False Claims Against the Government (obsolete)
38. Application for Pardon to Restore Civil Rights (obsolete)
39. Falsely Claiming Citizenship
40. Passport and Visa Matter
41. Explosives (obsolete)
42. Deserter; Deserter, Harboring
43. Illegal Wearing of Uniform: False Advertising or Misuse of Names, Words, Emblems or Insignia; Illegal Manufacture, Use, Possession, or Sale of Emblems and Insignia; Illegal Manufacture, Possession, or Wearing of Civil Defense Insignia; Miscellaneous, Forging or Using Forged Certificate of Discharge from Military or Naval Service; Miscellaneous, Falsely Making or Forging Naval, Military, or Official Pass; Miscellaneous, Forging or Counterfeiting Seal of Department or Agency of the United States; Misuse of the Great Seal of the United States or of the Seals of the President or the Vice President of the United States; Unauthorized Use of "Johnny Horizon" Symbol; Unauthorized Use of "Smokey Bear" Symbol
44. Civil Rights; Civil Rights, Election Laws, Civil Rights, Election Laws, Voting Rights Act, 1965
45. Crime on the High Seas (Includes stowaways on boats and aircraft)
46. Fraud Against the Government; Anti-Kickback Statute; Dependent Assistance Act of 1950; False Claims, Civil; Federal-Aid Road Act; Lead and Zinc Act; Public Works and Economic Development Act of 1965; Renegotiation Act, Criminal; Renegotiation Act, Civil; Trade Expansion Act of 1962; Unemployment Compensation Statutes; Economic Opportunity Act
47. Impersonation
48. Postal Violation (Except Mail Fraud)
49. National Bankruptcy Act
50. Involuntary Servitude and Slavery
51. Jury Panel Investigations
52. Theft, Robbery, Embezzlement, Illegal Possession or Destruction of Government Property
53. Excess Profits on Wool (obsolete)
54. Customs Laws and Smuggling
55. Counterfeiting
56. Election Laws
57. War Labor Disputes Act (obsolete)
58. Bribery; Conflict of Interest
59. World War Adjusted Compensation Act (obsolete)
60. Anti-Trust
61. Treason or Misprison of Treason
62. Miscellaneous—Including Administrative Inquiry (formerly Misconduct in Office)
63. Miscellaneous, Non-Subversive, including: Black Market in Railroad Tickets (obsolete); Civil Aeronautics Act (obsolete); Eight-Hour-Day Law; Federal Judiciary Investigations; Federal Juvenile Delinquency Act; Kickback Racket Act; Lands Division Matter (Condemnation Proceedings); Miscellaneous—Civil Suit; Miscellaneous, O.P.A. Violation (Civil) (obsolete); Miscellaneous— Wage and Hour Law (Fair Labor Standards Act of 1938); Soldiers and Sailors Civil Relief Act of 1940; Tariff Act of 1930; Top Hoodlum Coverage; Unreported Interstate Shipment of Cigarettes; Federal Cigarette Labeling and Advertising Act
64. Foreign Miscellaneous
65. Espionage
66. Administrative Matters
67. Personnel Matters
68. Alaskan Matters (obsolete)
69. Contempt of Court
70. Crime on Indian Reservation; Inducing Conveyance of Indian Trust Land; Crime on Government Reservation; Embezzlement or Theft of Indian Property
71. Bills of Lading Act
72. Obstruction of Criminal Investigations
73. Application for Pardon After Completion of Sentence and Application for Executive Clemency
74. Perjury
75. Bondsmen and Sureties
76. Escaped Federal Prisoner; Escape and Rescue; Probation Violator; Parole Violator; Mandatory Release Violator
77. Applicants (Special Inquiry, Departmental and Other Government Agencies, except those having special classifications)
78. Illegal Use of Government Transportation Requests
79. Missing Persons
80. Laboratory Research Matters
81. Gold Hoarding (obsolete)
82. War Risk Insurance (National Service Life Insurance) (obsolete)
83. Court of Claims
84. Reconstruction Finance Corporation Act (obsolete)
85. Home Owner Loan Corporation (obsolete)
86. Federal Lending and Insurance Agencies
87. Interstate Transportation of Stolen Property (Fraud by Wire, Radio, or Television)
88. Unlawful Flight to Avoid Prosecution, Custody, or Confinement; Unlawful Flight to Avoid Giving Testimony
89. Assaulting or Killing a Federal Officer; Congressional Assassination Statue
90. Irregularities in Federal Penal Institutions
91. Bank Burglary; Bank Larceny; Bank Robbery
92. Anti-Racketeering; A.R., Lea Act; A.R., Interference with Government Communications System; A.R., Hobbs Act
93. Ascertaining Financial Ability
94. Research Matters
95. Laboratory Cases (Examinaiton of Evidence in Other than Bureau Cases)
96. Alien Applicant (obsolete)
97. Registration Act
98. Sabotage
99. Plant Survey (obsolete)
100. Subversive Matter (Individuals); Internal Security (Organization)
101. Hatch Act (obsolete)
102. Voorhis Act
103. Interstate Transportation of Stolen Cattle
104. Servicemen's Dependents Allowance Act of 1942 (obsolete)
105. Internal Security (Nationalistic Tendency, Foreign Intelligence) (Individuals and Organizations, by country)
106. Alien Enemy Control; Escaped Prisoners of War and Internees (obsolete)
107. Denaturalization Proceedings (obsolete)
108. Foreign Travel Control (obsolete)
109. Foreign Political Matters
110. Foreign Economic Matters
111. Foreign Social Conditions
112. Foreign Funds
113. Foreign Military and Naval Matters
114. Alien Property Custodian Matter (obsolete)
115. Bond Default; Bail Jumper
116. Atomic Energy Act, Applicant; Atomic Energy Act, Employee
117. Atomic Energy Act, Criminal
118. Applicant, Central Intelligence Agency (obsolete)
119. Federal Regulations of Lobbying Act
120. Federal Tort Claims Act
121. Loyalty of Government Employees (obsolete)
122. Labor Management Relations Act, 1947
123. Special Inquiry, State Department, Voice of America (U.S. Information Center) (Public Law 402, 80th Congress)

26480

**NOTICES**

114. European Recovery Program (International Cooperation Administration), formerly Foreign Operations Administration, Economic Cooperation Administration or E.R.P.; European Recovery Program; A.I.D., Agency for International Development (obsolete)
125. Railway Labor Act; Railway Labor Act, Employer's Liability Act
126. National Security Resources Board, Special Inquiry (obsolete)
127. Sensitive Positions in the United States Government, Public Law 266 (obsolete)
128. International Development Program (Foreign Operations Administration)
129. Evacuation Claims (obsolete)
130. Special Inquiry, Armed Forces Security Act (obsolete)
131. Admiralty Matter
132. Special Inquiry, Office of Defense Mobilization (obsolete)
133. National Science Foundation Act, Applicant (obsolete)
134. Security Informants
135. PROSAB (Protection of Strategic Air Command Bases of U.S.A. Air Force)
136. American Legion Contact (obsolete)
137. Criminal Informants
138. Loyalty of Employees of the United Nations and Other Public International Organizations
139. Interception of Communications (Formerly, Unauthorized Publication or Use of Communications)
140. Security of Government Employees; S.G.E., Fraud Against the Government
141. False Entries in Records of Interstate Carriers
142. Illegal Use of Railroad Pass
143. Interstate Transportation of Gambling Devices
144. Interstate Transportation of Lottery Tickets
145. Interstate Transportation of Obscene Matter; Broadcasting Obscene Language
146. Interstate Transportation of Prison-Made Goods
147. Federal Housing Administration Matters
148. Interstate Transportation of Fireworks
149. Destruction of Aircraft or Motor Vehicles
150. Harboring of Federal Fugitives, Statistics
151. (Referral cases received from CSC under P.L. 298) Agency for International Development; Atomic Energy Commission (Civil Service Commission); National Aeronautics and Space Administration; National Science Foundation; Peace Corps; Action; U.S. Arms Control and Disarmament Agency; World Health Organization; International Labor Organization; U.S. Information Agency
152. Switchblade Knife Act
153. Automobile Information Disclosure Act
154. Interstate Transportation of Unsafe Refrigerators
155. National Aeronautics and Space Act of 1958
156. Welfare and Pension Plans Disclosure Act
157. Extremist Matters; Civ. Unrest
158. Labor-Management Reporting and Disclosure Act of 1959 (Security Matter) (obsolete)
159. Labor-Management Reporting and Disclosure Act of 1959 (Investigative Matter)
160. Federal Train Wreck Statute
161. Special Inquiries for White House, Congressional Committee and Other Government Agencies
162. Interstate Gambling Activities
163. Foreign Police Cooperation

164. Crime Aboard Aircraft
165. Interstate Transmission of Wagering Information
166. Interstate Transportation in Aid of Racketeering
167. Destruction of Interstate Property
168. Interstate Transportation of Wagering Paraphernalia
169. Hydraulic Brake Fluid Act (obsolete)
170. Extremist Informants
171. Motor Vehicles Seat Belt Act (obsolete)
172. Sports Bribery
173. Public Accommodations, Civil Rights Act of 1964
   Public Facilities, Civil Rights Act of 1964
   Public Education, Civil Rights Act of 1964
   Employment, Civil Rights Act of 1964
174. Explosives and Incendiary Devices; Bomb Threats (Formerly, Bombing Matters; Bombing Matters, Threats)
175. Assaulting the President (or Vice President) of the United States
176. Anti-riot Laws
177. Discrimination in Housing
178. Interstate Obscene or Harassing Telephone Calls
179. Extortionate Credit Transactions
180. Desecration of the Flag
181. Consumer Credit Protection Act
182. Illegal Gambling Business; Illegal Gambling Business, Obstruction; Illegal Gambling Business, Forfeiture
183. Racketeer, Influenced and Corrupt Organizations
184. Police Killings
185. Protection of Foreign Officials and Official Guests of the United States
186. Real Estate Settlement Procedures Act of 1974
187. Privacy Act of 1974, Criminal
188. Crime Resistance
189. Equal Credit Opportunity Act
190. Freedom of Information Privacy Acts
191. False Identity Matter

Files kept in FBI Field Offices. Field offices maintain certain records that are not contained at FBI Headquarters that include files, index cards, and related material pertaining to cases in which there was no prosecutive action undertaken; perpetrators of violations not developed during investigation; or investigation revealed allegations were unsubstantiated or not within the investigative jurisdiction of the Bureau. These investigations were closed in field offices and correspondence not forwarded to FBIHQ.

Duplicate records and records which extract information reported in the main files are also kept in the various divisions of the FBI to assist them in their day-to-day operation. These records are lists of individuals which contain certain biographic data, including physical description and photograph. They may also contain information concerning activities of the individual as reported to FBIHQ by the various field offices. The establishment of these lists is necessitated by the needs of the Divisions to have immediate access to pertinent information duplicative of data found in the Central Records without the delay caused by a time-consuming manual search of central indices. The manner of segregating these individuals varies depending on the particular needs of the FBI Division. The information pertaining to individuals who are a part of the list is derivative

of information contained in the Central Records System. These duplicative records fall into the following categories:

(1) Listings of individuals used to assist in the location and apprehension of individuals for whom legal process is outstanding (fugitives);

(2) Listings of individuals used in the identification of particular offenders in cases where the FBI has jurisdiction. These listings include various photograph albums and background data concerning persons who have been formerly charged with a particular crime and who may be suspect in similar criminal activities; and photographs of individuals who are unknown but suspected of involvement in a particular criminal activity, for example, bank surveillance photographs;

(3) Listings of individuals as part of an overall criminal intelligence effort by the FBI. This would include photograph albums, lists of individuals known to be involved in criminal activity, including theft from interstate shipment, interstate transportation of stolen property, and individuals in the upper echelon of organized crime;

(4) Listings of individuals in connection with the FBI's mandate to carry out Presidential directives on January 8, 1943, July 24, 1950, December 15, 1953, and February 18, 1976, which designated the FBI to carry out investigative work in matters relating to espionage, sabotage, and foreign counterintelligence. These listings may include photograph albums and other listings containing biographic data regarding individuals. This would include lists of identified and suspected foreign intelligence agents and informants;

(5) Special indices duplicative of the central indices used to access the Central Records System have been created from time to time in conjunction with the administration and investigation of major cases. This duplication and segregation facilitates access to documents prepared in connection with major cases.

Some of the information contained in the main files has also been extracted and placed on computer to enable various divisions to retrieve information more rapidly by avoiding the need for a manual search for information maintained in the main files. For example, since investigation of major frauds requires the Agent to collect and organize massive volumes of evidence and other investigative information, the FBI is using computers to do this in a more accurate and expeditious manner. Additionally, Agents occasionally seize evidence in computerized form and FBI computers are used to organize and sort the information in preparation for trial.

Also, personnel type information dealing with such matters as attendance and production and accuracy requirements is maintained by some divisions.

[FR Doc 77-14544 Filed 5-23-77; 8:45 am]

## INVESTIGATIVE INDEXES

## FBI HEADQUARTERS (note a)

| Title | Description and use | Status |
|---|---|---|
| Indexes retrievable through the central records system: | | |
| Administrative index (ADEX) | Consists of cards with descriptive data on individuals who were subject to investigation in a national emergency because they were believed to constitute a potential or actual threat to the internal security of the United States. When ADEX was started in 1971, it was made up of people who were formerly on the security index, reserve index, or agitator index. Maintained in two separate locations in FBI headquarters, ADEX was discontinued in January 1976. The computer section of the FBI has in storage on computer tape all the individuals who were on ADEX when it was discontinued. | Inactive |
| Background investigation index--Department of Justice | Consists of cards on persons who have been the subject of a full field investigation in connection with their consideration for employment in sensitive positions with the Department of Justice, such as a U.S. attorney, Federal judge, or high level departmental official. | Active |

a/Does not include ten classified indexes.

| Title | Description and use | Status |
|---|---|---|
| Background investigation index--White House, other executive agencies, and the Congress | Consists of cards on persons who have been the subject of a full field investigation in connection with their consideration for employment in sensitive positions with the White House, executive agencies (other than the Department of Justice), and the Congress. | Active |
| Bank robbery note file | Consists of photographs of notes used in bank robberies in which the suspect has been identified. This index is used to help solve robberies in which the suspect has not been identified, but a note was left. The note is compared with the index to try to match the sentence structure and handwriting for the purpose of identifying possible suspects. | Active |
| Car ring theft working index | Contains cards on individuals involved in car ring theft cases on which the FBI laboratory is doing examination work. | Active |

| Title | Description and use | Status |
|-------|---------------------|--------|
| Check circular file | Consists of fliers filed numerically in a control file on fugitives who are notorious fraudulent check passers and who are engaged in a continuing operation of passing checks. The fliers include the subject's name, photo, a summary of the subject's method of operation, and other identifying data. They are used to alert other FBI field offices and business establishments that may be the victims of bad checks. | Active |
| Computerized telephone number file 'CTNF) 1. telligence | Consists of a computer listing of telephone numbers (and subscribers' names and addresses) alleged to have been used by extremists and revolutionaries. These numbers were matched with other telephone numbers discovered during investigations to determine possible connections with known extremists and revolutionaries. This information was gathered from telephone company toll records. The index was developed to facilitate FBI efforts to locate persons it classified as extremists and revolutionary. The FBI discontinued using this computerized information in February 1975, but the computer tapes of the following individuals and organizations are in storage: (1) Al Fatah (an Arab terrorist group), (2) Weatherman, (3) ew Left, and (4) Black and other ethnic extremists. | Inactive |

35

| Title | Description and use | Status |
|---|---|---|
| CTNF--organized crime and gambling | Consists of computerized listing of telephone numbers (and subscribers' names and addresses) used by organized crime and gambling figures. These numbers are matched with telephone numbers obtained through subpoena in subsequent investigations, usually to determine possible connections with organized crime and and gambling figures. The names and addresses of subscribers of telephones used by known organized crime and gambling figures are retrievable through this index. | Active |
| Criminal informant index | Consists of cards containing identity and brief background information on all active and inactive informants furnishing information in the criminal area. | Active |
| DEA class I narcotics violators | Consists of a computer listing of narcotic violators--persons known to manufacture, supply, or distribute large quantities of illicit drugs--with background data. It is used by the FBI when assisting DEA in disseminating intelligence data concerning illicit drug trafficking. (See p. 9 of this report.) | Active |

| Title | Description and use | Status |
|-------|---------------------|--------|
| Evidence control index | Consists of cards maintained by the FBI laboratory containing the names of suspects, subjects, victims, etc., in matters which are currently under examination or have undergone examination within the last 3 years. The index is used to facilitate managing evidence examinations. | Active |
| Extremist informant index | Consists of cards with identity and background data on all extremist informants. It was used as a reference to aid in the supervision of the informant program. This index was discontinued in Novmeber 1976. | Inactive |
| Extremist photo album | Consists of photo and descriptions of known extremists, extremist fugitives, and some informants. All persons in the key extremist program were included in this album. Used for ready reference and fugitive identification, this photo album was discontinued in January 1977. | Inactive |
| False identities index | Contains cards with the names of deceased individuals whose birth certificates have been obtained by other persons for possible false identification uses and in connection with which the FBI laboratory has been requested to perform examinations. | Active |

| Title | Description and use | Status |
|---|---|---|
| FBI wanted persons index | Consists of cards on persons being sought under Federal warrants covering violations which fall under the jurisdiction of the FBI. It is used as a ready reference to identify those fugitives. | Active |
| Foreign counter-intelligence (FCI) asset index | Consists of cards with identity and background data on all active and inactive operational and informational assets in the foreign counter-intelligence field. It is used as a reference aid of the FCI asset program. | Active |
| Fugitive alert file | Consists of fliers, filed numerically in a control file, on fugitives charged with crimes relating to killing or attempting to kill a law enforcement officer or believed to be a threat to the safety of law enforcement personnel. The fliers, which include names, aliases, physical descriptions, and photographs, are distributed to law enforcement agencies by the FBI to alert them of such persons. This program was discontinued in June 1977, and the file is no longer maintained at headquarters. | Inactive |
| Fugitive bank robbers file | Consists of fliers on bank robbery fugitives filed sequentially in a control file. FBI headquarters distributes to the field offices fliers on bank robbers in a fugitive status for 15 or more days to facilitate their location. | Active |

| Title | Description and use | Status |
|-------|---------------------|--------|
| Gambling case listing | Consists of a listing of persons under investigation for gambling on which the FBI laboratory has provided assistance since 1969. | Active |
| Identification order, fugitive flyer file | Consists of fliers filed numerically. When immediate leads have been exhausted in fugitive investigations and a crime of considerable public interest has been committed, the fliers are given wide circulation among law enforcement agencies throughout the United States and are posted in post offices. The fliers contain the fugitive's photograph, fingerprints, and description. | Active |
| Key activist program photo album | Consists of photos and descriptive data on selected individuals advocating civil disobedience and other unlawful and disruptive acts. It was used to intensify the investigative effort on those persons. This index was discontinued in February 1975. | Inactive |
| Key extremist program listing | Contains a listing of selected individuals who were under investigation for extremist activities and on whom investigation was to be intensified. Individuals included those who traveled extensively and called for civil disobedience and unlawful or disruptive acts. It was used to intensify the investigative effort on those persons. This index was discontinued in February 1975. | Inactive |

| Title | Description and use | Status |
|-------|--------------------|--------|
| Kidnapping book | Consists of data, filed chronologically, on kidnappings that have occurred since the early 1950s.  The victims' names and the suspects' names, if known, would be listed with a brief description of the circumstances surrounding the kidnapping.  The file is used as a reference aid in matching up prior methods of operation in unsolved kidnapping cases. | Active |
| La Cosa Nostra (LCN) membership index | Contains cards on individuals having been identified as members of the LCN. The cards contain personal data and pictures.  The index is used solely by FBI agents for assistance in investigating organized crime matters. | Active |
| Leased line letter request index | Contains cards on individuals and organizations who are or have been the subject of a national security electronic surveillance in which a leased line letter was necessary.  It is used as an administrative and statistical aid. | Active |
| Mailed cover index | Consists of cards containing a record of all mail covers conducted on individuals and groups since about January 1973.  It was used for reference in preparing mail cover requests.  This index was discontinued in 1975. | Inactive |

| Title | Description and use | Status |
|---|---|---|
| Military deserter index | Consists of cards containing the names of all military deserters the various military branches have requested FBI assistance in locating. It is used as an administrative aid. | Active |
| National bank robbery album | Consists of fliers on bank robbery suspects filed sequentially in a control file. When an identifiable bank camera photograph is available and the case has been under investigation for 30 days without identifying the subject, FBI headquarters sends a flier to the field offices to help identify the subject. | Active |
| National fraudulent check file | Contains photographs of the signatures on stolen and counterfeit checks. It is filed alphabetically, but there is no way of knowing if the names are real or fictitious. The index is used to help solve stolen check cases by matching checks obtained in such cases against the index to identify a possible suspect. | Active |
| National security electronic surveillance card file (requested) | Contains cards on individuals and organizations on whom a national security electronic surveillance has been requested. It is used as an administrative and statistical aid. | Active |

41

Case 1:12-cv-00313-BAH   Document 150-1   Filed 06/23/23   Page 51 of 115

| Title | Description and use | Status |
|---|---|---|
| National security electronic surveillance card file (instituted) | Contains cards on individuals and organizations on whom a national security electronic surveillance has been instituted. It is used as an administrative and statistical aid. | Active |
| Night depository trap index | Contains cards with the names of persons who have been involved in the theft of deposits made in bank night depository boxes. Since these thefts have involved various methods, the FBI uses the index to solve such cases by matching up similar methods to identify possible suspects. | Active |
| Revolutionary Communist Party (RCP) photo album | Consists of photos and descriptions of individuals who are leaders and activists in the RCP, formerly the Revolutionary Union. The FBI has identified the RCP to be a Marxist-Leninist-Maoist revolutionary organization, which calls for a violent revolution in the United States. This index is used as an investigative aid. | Active |
| Revolutionary Union (RU) photo album | See description and use for RCP album. This album was discontinued after the RU changed its name and an updated photo album was created titled RCP. | Inactive |

| Title | Description and use | Status |
|---|---|---|
| Security of Government employees index | Contains cards on persons whom the FBI, for security or loyalty purposes, has investigated under Executive Orders 9835 and 10450. The index is used to facilitate the location of the subject's file. | Active |
| Security informant index | Consists of cards containing identity and brief background information on all active and inactive informants furnishing information in the criminal area. | Active |
| Selective Service violators index | Contains cards on individuals being sought on the basis of Federal warrants for violation of the Selective Service Act. | Active |
| Skyjack fugitive album | Contains photographs with descriptive data of fugitives wanted for skyjacking. It is used as a reference aid in cases where the fugitive may reenter the United States. | Active |
| Symbionese Liberation Army (SLA) index | Contains cards with mixed subject entries, such as individuals, weapons, and vehicles, thought to have a connection with the SLA. It was used to tabulate and retrieve data relating to SLA activities. The FBI has indicated this index will be destroyed when the Justice Department gives it permission to destroy intelligence-related documents. | Inactive |

4.

| <u>Title</u> | <u>Description and use</u> | <u>Status</u> |
|---|---|---|
| Toll record request index | Contains cards on individuals and organizations on whom toll records have been obtained in national security-related cases and with respect to which FBI headquarters had to prepare a request letter. It is used primarily to facilitate the handling of repeat requests on individuals listed. | Active |
| Top echelon criminal informant program (TECIP) index | Consists of cards containing identity and brief background information on individuals who are either furnishing high level information in the organized crime area or are under development to furnish such information. The index is used primarily to evaluate, corroborate, and coordinate informant information and to develop prosecutive data against racket figures under Federal, State, and local statutes. | Active |
| Top ten program file | Consists of fliers, filed numerically in a control file, on fugitives considered by the FBI to be one of the 10 most wanted. Including a fugitive on the top 10 usually assures greater national news coverage as well as nationwide circulation of the flier. | Active |

Case 1:12-cv-00313-BAH   Document 150-1   Filed 06/23/23   Page 54 of 115

| Title | Description and use | Status |
|---|---|---|
| Wanted fliers file | Consists of fliers, filed numerically in a control file, on badly wanted fugitives whose apprehension may be facilitated by immediate nationwide circulation of a flier.  The flier contains the names, photographs, aliases, previous convictions, and caution notices. | Active |
| Weatherman photo album | Consists of photos and descriptions of individuals associated with Weatherman activities for use as a reference aid in Weatherman investigations. | Active |
| Witness protection program index | Contains cards on individuals who have been furnished a new identity by the U.S. Justice Department because of their testimony in organized crime trials.  It is used primarily to notify the U.S. Marshals Service when information related to the safety of a protected witness comes to the FBI's attention. | Active |

Indexes not fully
  retrievable through
  the central records
  system

| Title | Description and use | Status |
|---|---|---|
| Associates of DEA class I narcotics violators | Consists of a computer listing of individuals DEA has identified as associates of class I narcotics violators. (See p. 9 of this report.) | Active |

| Title | Description and use | Status |
|-------|---------------------|--------|
| White House special index | Contains cards on all potential White House appointees, staff members, guests, and visitors referred to the FBI by the White House security office for a records check to identify any adverse or derogatory information. This index expedites such checks in the tight time frame usually required. (See p. 10 of this report.) | Active |
| Major case index-- Patricia Hearst kidnapping | Consists of computerized synopses of information mostly on persons related to the investigation--subjects, suspects, friends, associates, witnesses--and other key data, such as license plate numbers, telephone numbers, and physical evidence. This information is computerized to facilitate the management and coordination of large and complex investigations. Not all the names included on the computer tape are considered important enough to include in the general index and thus, are not retrievable through the central records system. | Inactive |
| Major case index-- bombing of TWA passenger terminal at La Guardia Airport | Same as above. | Active |
| Major case index--burglary of Democratic National Headquarters (Watergate) | Same as above. | Inactive |

| Title | Description and use | Status |
|---|---|---|
| Major case index--murder of FBI agents on Pine Ridge Indian Reservation | Same as above. | Inactive |
| Major case index--Phoenix land fraud | Same as above. | Active |
| Major case index--Don Segretti campaign law violations, a spinoff of the Watergate investigation | Same as above. | Inactive |
| Major case index--extortion by threat of bombing of 200 major U.S. companies by unknown subject, some letter bombs were received | Same as above. | Active |
| Major case index--investigation into possible organized crime influence over waterfront businesses and unions in Atlantic and Gulf ports | Same as above. | Active |

| Title | Description and use | Status |
|---|---|---|
| Major case index--investigation concerning an illegal gambling business | Same as above. | Active |
| Major case index--investigation into a series of bombings in the west coast area | Same as above. | Inactive |
| Major case index--investigation of an individual under the Racketeer Influence and Corrupt Organizations (RICO) Statute | Same as above. | Active |
| Major case index--investigation of an individual under the Racketeer Influence and Corrupt Organizations Statute | Same as above. | Inactive |

| Title | Description and use | Status |
|---|---|---|
| Electronic surveillance indices records system | Consists of cards on individuals who have been the subject of a microphone or telephone surveillance by the FBI from 1960 to present. This includes individuals who were the (1) targets of direct surveillance, (2) participants in monitored conversations, and (3) owners, lessors, or licensors of the premises on which the FBI has conducted an electronic surveillance. In addition to the persons' names, the card would contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the field office which conducted the monitoring. It also includes persons who were mentioned from 1960 to 1969. The highly publicized 17 White House wiretaps were initially listed separately on the special coverage index until the summer of 1976 when they were merged into the ELSUR index. The ELSUR index is used to respond to inquiries by the Department of Justice and to prepare title III affidavits. (See p. 8.) | Active |

| Title | Description and use | Status |
|---|---|---|
| Indexes retrievable through the Identification Division records system | | |
| Criminal fingerprint card file | Consists of cards, filed by fingerprint classification, on all individuals whose fingerprints have been submitted to the FBI as a result of arrest or incarceration by Federal, State, or local law enforcement agencies. | Active |
| Criminal fingerprint card index | Consists of index cards filed alphabetically on each individual who has a criminal fingerprint card at the FBI as a result of arrest or incarceration by Federal, State, or local law enforcement agencies. These cards contain a number which refers to records on individuals called rap sheets, which are compilations of arrests and related data submitted to the FBI by Federal, State, and local law enforcement agencies. | Active |
| Civil fingerprint card file | Consists of cards, filed by fingerprint classfication, on all individuals whose fingerprints have been submitted to the FBI as a result of (1) Federal employment application, (2) military service, (3) alien registration or naturalization, and (4) desire to have their fingerprints placed on file. | Active |

| Title | Description and use | Status |
|---|---|---|
| Civil finger-print card index | Consists of index cards filed alphabetically on individuals who (1) have civil fingerprint cards at the FBI as a result of Federal employment application, military service, or alien registration and naturalization and (2) desire to have their fingerprints placed on record with the FBI for personal identification purposes. | Active |
| Single fingerprint card file | Contains fingerprint cards on individuals with the capability to commit, or who are known to have committed, the following types of crimes--bank robbery, bank burglary, major thefts, interstate transportation of obscene material, bombings, extortion, professional fraudulent check passing, white extremists, hijacking, and kidnapping. This index is searched when latent prints are available in corresponding crimes. A search of all criminal fingerprints maintained could not be done because of the volume of criminal fingerprint cards. | Active |
| Identification order, fugitive flyer file | Consists of cards with finger-prints and an alphabetical listing of those FBI fugitives on whom identification orders have been issued. It is used for any immediate comparison desired with the fingerprints of any one of these fugitives. (See description for identification order, fugitive fliers file on p. 39 of this appendix.) | Active |

| <u>Title</u> | <u>Description and use</u> | <u>Status</u> |
|---|---|---|
| Missing per-<br>sons index | Consists of cards containing the names of and other data on missing persons.  The index is used to help locate missing persons at the request of an interested relative and local and Federal law enforcement agencies and to facilitate the handling of requests from the White House and the Congress for assistance in missing person matters. | Active |
| General ap-<br>pearance<br>index | Consists of index cards filed numerically and containing a photograph and physical description of individuals who have committed or who are capable of committing any type of swindle or confidence game. One section of this card file is devoted to individuals who are in the major theft section of the single fingerprint file. The index is used for the purpose of identifying subjects of confidence games by means of descriptions made available by the victim or other witnesses. | Active |

| Title | Description and use | Status |
|---|---|---|
| Indexes retriev- able through the National Crime Informa- tion Center (NCIC) records system | | |
| NCIC criminal history file | Consists of computerized infor- mation on individuals who have been convicted of significant violations of Federal, State, or local law. Data stored in the computer includes personal identification data as well as public record data concerning each of the individual's major steps through the criminal jus- tice process. This information is used by criminal justice agencies in the discharge of their official mandated respon- sibilities. | Active |
| NCIC missing persons file | Consists of computerized infor- mation on any person who is (1) missing and because of proven physical/mental disability is subject to personal and im- mediate danger, (2) missing un- der circumstances indicating that the disappearance was not voluntary, (3) accompanied by another person under circum- stances indicating that his or her physical safety is in dan- ger, and (4) declared unemanci- pated as defined by the laws of the State of residence and does not meet any of the other entry criteria. This information is used by law enforcement agen- cies to locate persons who are reported as missing. | Active |

| Title | Description and use | Status |
|---|---|---|
| NCIC wanted persons file | Consists of computerized information on individuals who have committed, or have been identified with, an offense which is classified as a felony or serious misdemeanor under the existing penal statutes of the law enforcement jurisdiction originating the entry.  Probation and parole violators meeting this criteria are also included as are individuals for whom Federal warrants are outstanding.  This information is used by law enforcement agencies to locate fugitives. | Active |

# INVESTIGATIVE INDEXES

## FBI FIELD OFFICES (note a)

| Title | Description and use | Status | Number of field offices maintaining index: Not fully retrievable through field central records (note b) | Total |
|---|---|---|---|---|
| Indexes related to central records system: | | | | |
| Administrative index (ADEX) | See description and use in appendix III, page 33. This index was discontinued in January 1976. | Inactive | 0 | 29 |
| Associates of DEA class I narcotics violators | See description and use in appendix III, page 45. This index is also maintained in two resident agencies. | Active | 59 | 59 |
| Bank fraud and embezzlement index | Consists of individuals who have been the subject of bank fraud and embezzlement investigations. This file is used as an investigative aid. | Active | 0 | 1 |

a/Does not include 15 classified indexes.

b/Hereafter referred to as "Not fully retreivable."

APPENDIX IV

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Bank robbery album | Consists of photos of bank robbers, burglars, and larceny subjects. In some field offices it will also contain pictures obtained from local police departments of known armed robbers and thus potential bank robbers. This index is used to develop investigative leads in bank robbery cases and may also be used to show to witnesses of bank robberies. It is usually filed by race, height, and age. This index is also maintained in one resident agency. | Active | 10 | 47 |
| Bank robbery nickname index | Consists of nicknames used by known bank robbers. The index card on each would contain the real name and method of operation and is filed in alphabetical order. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Bank robbery suspect index | Consists of a control file or index cards with photos, if available, of bank robbers or burglars. In some field offices these people may be part of the bank robbery album. This index is generally maintained and used in the same manner as the bank robbery album. | Active | 1 | 33 |
| Black extremist photo index | Consists of photos with background information of black extremists who reside within the field office's territorial jurisdiction. It was used for investigative purposes. | Inactive | 0 | 1 |
| Black Panther Party photo index | Consists of photos with background information on members of the Black Panther Party. It was used as an investigative aid. | Inactive | 0 | 3 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Black United Front index | Contains photos and background information on people who were known to be involved with the Black United Front. It was used to readily identify individuals involved in extremist activities. It was discontinued in November 1970. | Inactive | 0 | 1 |
| Bombing suspect, explosives and incendiary devices file | Consists of cards in most cases on people who have the propensity for violence and the potential for using explosives or incendiary devices. It is used in investigating unknown subject bombing cases. | Active | 0 | 27 |
| Cartage album | Consists of photos with descriptive data of individuals who have been convicted of theft from interstate shipment or interstate transportation of stolen property where there is a reason to believe they may repeat the offense. It is used in investigating the above violations. | Active | 0 | 3 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Channelizing index | Consists of cards with the names and case file numbers of people who are frequently mentioned in informant reports. The index is used to facilitate the distributing or channeling of informant reports to appropriate files. | Active | 0 | 9 |
| Check circular file | See description and use in appendix III, page 35. | Active | 0 | 12 |
| Communist Party (CP) photo album (national) | Contains alphabetically filed cards with photos and background information on CP members in the United States. | Inactive | 0 | 1 |
| Communist Party photo album (regional) | Contains alphabetically filed cards with photos and background information on all CP members in the region covered by the FBI field office. It was used to readily identify CP members. | Inactive | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Computerized telephone number file (CTNF) organized crime and gambling | See description and use in appendix III, page 36. | Active | 0 | 27 |
| Confidence game (flimflam) album | Consists of photos with descriptive information on individuals who have been arrested for confidence games and related activities. It is used as an investigative aid. | Active | 1 | 4 |
| Copyright matters index | Consists of cards of individuals who are film collectors and of film titles. It is used as a reference in the investigation of copyright matters. | Active | 0 | 2 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Index |
| Criminal intelligence index | Consists of cards with name and file number of individuals who have become the subject of an antiracketeering investigation. The index is used as a quick way to ascertain file numbers and the correct spelling of names. This index is also maintained in one resident agency. | Active | 0 | 2 |
| Car ring case photo album | Consists of photos of subjects and suspects involved in a large car theft ring investigation. It is used as an investigative aid. | Active | 1 | 1 |
| Car ring case photo album | Same as above. | Active | 0 | 1 |

61

| Title | Description and use | Status | Number of field offices maintaining index | |
|-------|--------------------|--------|---|---|
| | | | Not fully retrievable | Total |
| Car ring case photo album and index | Consists of photos of subjects and suspects involved in a large car theft ring investigation. The card index maintained in addition to the photo album contains the names and addresses appearing on fraudulent title histories for stolen vehicles. Most of the names appearing on these titles are fictitious. Both the photo album and card indexes are used as an investigative aid. | Active | 1 | 1 |
| Car ring case photo album | Consists of photos of subjects and suspects in a large car theft ring investigation. It is used as an investigative aid. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
| --- | --- | --- | --- | --- |
| | | | Not fully retrievable | Total |
| Car ring case toll call index | Consists of cards with information on persons who subscribe to telephone numbers to which toll calls have been placed by the major subjects of a large car theft ring investigation. It is maintained numerically by telephone number. It is used to facilitate the development of a probable cause for a title III installation. | Active | 1 | 1 |
| Car ring case toll call index | Same as above. | Active | 1 | 1 |
| DEA class I narcotics violators | See description and use in appendix III, page 36. This index is also maintained in two resident agencies. | Active | 0 | 59 |
| Deserter index | Contains cards with the names of individuals who are known military deserters. It is used as an investigative aid. | Active | 0 | 4 |

| Title | Description and use | Status | Number of field offices maintaining index | |
| --- | --- | --- | --- | --- |
| | | | Not fully retrievable | Total |
| Extremist photo album | See description and use in appendix III, p. 37. This album was discontinued in January 1977. | Inactive | 1 | 20 |
| False identities program list | Consists of a listing of names of deceased individuals whose birth certificates have been obtained after the person's death, and thus whose names are possibly being used for false identification purposes. The listing is maintained as part of the FBI's program to find persons using false identities for illegal purposes. | Active | 0 | 31 |
| False identity photo album | Consists of names and photos of people who have been positively identified as using a false identification. This is used as an investigative aid in the FBI's investigation of false identities. | Active | 0 | 2 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Fraud against the Government index | Consists of individuals who have been the subject of a "fraud against the Government" investigation. It is used as an investigative aid. | Active | 0 | 1 |
| Fugitive alerts file | See description and use in appendix III, page 38. | Inactive | 0 | 34 |
| Fugitive bank robbers file | See description and use in appendix III, page 38. | Active | 0 | 43 |
| Fuerzas Armadas De Liberacion National (FALN) index | Consists of cards on people interviewed in connection with or suspected of belonging to this Puerto Rican national-ist terrorist group, which has claimed responsibility for numerous bombings. It is used to investigate bombings. | Active | 0 | 3 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| General security index | Contains cards on all persons who have been the subject of a security classification investigation by the FBI field office. These cards are used for general reference purposes. | Active | 0 | 1 |
| Hoodlum license plate index | Consists of cards with the license plate numbers and descriptive data on known hoodlums and cars observed in the vicinity of hoodlum homes. It is used for quick identification of such persons in the course of investigation. The one index which is not fully retrievable is maintained by a resident agency. | Active | 1 | 3 |
| Identification orders, fugitive flyer file | See description and use in appendix III, page 39. | Active | 0 | 45 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Informant index | Consists of cards with the name, symbol numbers, and brief background information on the following categories of active and inactive informants: top echelon criminal informants, security informants, criminal informants, operational and informational assets, extremist informants (discontinued), plant informants—informants on and about certain military bases (discontinued), and potential criminal informants. | Active | 0 | 56 |
| Informants in other field offices index | Consists of cards with names or symbol numbers of informants in other FBI field offices that are in a position to furnish information to furnish informa- tion that may be of value to other field offices. Basic background information would also be included on the index card. | Active | 3 | 15 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Interstate transportation of stolen aircraft photo album | Consists of photos and descriptive data on individuals who are suspects known to have been involved in interstate transportation of stolen aircraft. It is used as an investigative aid. | Active | 0 | 1 |
| Internal Revenue Service (IRS) wanted list | Consists of one-page fliers from IRS on individuals with background information who are wanted by IRS for tax purposes. It is used in the identification of persons wanted by IRS. | Active | 0 | 11 |
| Jewish Defense League (JDL) photo album | Consists of photos and basic data on JDL members. It is maintained as an investigative aid. | Inactive | 0 | 1 |
| Key activist program photo album | See description and use in appendix III, page 39. This album was discontinued in February 1975. One field office has destroyed this album subsequent to our review. | Inactive | 0 | 46 |

68

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Klan member-ship index | Consists of cards of members of the United Klans of America, Incorporated. It is used to readily identify Klan members. One field office has destroyed its Klan index subsequent to our review. | Active | 0 | 3 |
| Known check passers album | Consists of photos with descriptive data of persons known to pass stolen, forged, or counterfeit checks. It is used as an investigative aid. | Active | 0 | 4 |
| Known gambler index | Consists of cards with names, descriptive data, and sometimes photos of individuals who are known bookmakers and gamblers. The index is used in organized crime and gambling investigations. Subsequent to our review, and at the recommendation of the inspection team at one of the two field offices where the index was not fully retrievable, the index was destroyed and thus is not included in the total. | Active | 1 | 5 |

69

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| La Cosa Nostra membership index | See description and use in appendix III, page 40. This index is also maintained in one resident agency. | Active | 0 | 55 |
| National bank robbery album | See description and use in appendix III, page 41. | Active | 0 | 42 |
| Organized crime photo album | Consists of photos and background information on individuals involved in organized crime activities. The index is used as a ready reference in identifying organized crime figures within the field offices' jurisdictions. | Active | 0 | 13 |
| Photospread identification elimination file | Consists of photos of individuals who have been subjects and suspects in FBI investigations. It also includes photos received from other law enforcement agencies. These pictures can be used to show witnesses of certain crimes. | Active | 10 | 14 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Pimp photo album | Consists of photos with identifying data on persons known to be pimps. It was used in connection with investigations under the White Slave Traffic Act. | Inactive | 0 | 1 |
| Prostitute photo album | Consists of photos with background data on prostitutes who have prior local or Federal arrests for prostitution. It is used to identify prostitutes in connection with investigations under the White Slave Traffic Act. | Active | 1 | 4 |
| Puerto Rican Socialist Party (PSP) photo album | Consists of photos of members in a leadership or influential position who are known to travel on PSP business. It is maintained as a ready reference to assist in coverage of the travel of these individuals. | Active | 0 | 1 |

71

| Title | Description and use | Status | Number of field offices maintaining index | |
|-------|---------------------|--------|---------|---|
| | | | Not fully retrievable | Total |
| Real estate listings computer printout | Consists of a computer printout maintained by name, involving a particular city's real estate listing in Multiple Listing Service for 1974-1975. It was used in connection with an investigation. | Inactive | 1 | 1 |
| Reserve index | Consists of names of individuals within the field offices' jurisdiction having affiliation or sympathy with the Communist Party (CP). It was revised in 1956 to include persons associated with revolutionary groups other than CP. It was used for investigative purposes in case of a national emergency. This index was discontinued in September 1971. | Inactive | 0 | 6 |
| Revolutionary Communist Party photo album | See description and use in appendix III, page 42. | Active | 1 | 22 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Revolutionary Union photo album | See description and use in appendix III, page 42. Field offices were directed to destroy this album in May 1976. | Inactive | 0 | 4 |
| Royal Canadian Mounted Police (RCMP) wanted circular file | Consists of a control file of individuals with background information of persons wanted by the RCMP. It is used to notify the RCMP if an individual is located. | Active | 0 | 16 |
| Seattle Liberation Front (SLF) photo album | Consists of photos with background information on extremists who are fugitives, informants who travel in behalf of the group, and members and sympathizers of the SLF. It was used for ready identification of individuals involved. | Inactive | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Security index | Contains names, photos, and descriptive data on individuals to be handled under the emergency deten- tion program. This pro- gram was discontinued and all the people on it were transferred to the adminis- trative index (ADEX). It was used as an investiga- tive aid. This index was discontinued in 1971. | Inactive | 0 | 1 |
| Security photo album | Consists of photos with attached identifying data of all people subject to any security classifica- tion investigation in the field office. This index contains basically the same names that are main- tained in the general security index. | Inactive | 0 | 1 |
| Security subjects control index | Consists of cards contain- ing the names and case file numbers of individuals who have been subject to secu- rity investigations. It is used as a reference source. | Active | 0 | 12 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Security tele-phone number index | Contains cards with tele-phone subscriber informa-tion subpoenaed from the telephone company in any security investigation. It is maintained numeri-cally by the last three digits in the telephone number and used for general reference pur-poses in security inves-tigations. | Active | 1 | 1 |
| Skyjack fugi-tive album | Consists of photos with additional information on individuals on whom war-rants are outstanding for skyjacking and who are still in a fugitive status. It is used for ready ref-erence purposes. | Active | 0 | 5 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|-------|---------------------|--------|-------------------|-------|
| | | | Not fully retrievable | Total |
| Sources of information index | Consists of cards on individuals and organizations such as banks, motels, and local governments that are willing to furnish information to the FBI with sufficient frequency to justify listing for the benefit of all agents. It is maintained to facilitate the use of such sources. | Active | 1 | 10 |
| Special services index | Contains cards of prominent individuals who are in a position to furnish assistance in connection with FBI investigative responsibilities. | Active | 4 | 28 |
| Stolen checks and fraud by wire index | Consists of cards on individuals involved in check and fraud by wire violations. It is used as an investigative aid. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Stop notices index | Consists of cards on names of subjects or property where the field office has placed a stop at another law enforcement agency or private business such as a pawn shop in the event information comes to the attention of that agency concerning the subject or property. This is filed numerically by investigative classification. It is used to insure that the agency where the stop is placed is notified when the subject is apprehended or the property is located or recovered. | Active | 0 | 43 |
| Surveillance locator index | Consists of cards with basic data on individuals and businesses which have come under physical surveillance in the city in which the field office is located. It is used for general reference purposes in antiracketeering investigations. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Symbionese Liberation Army (SLA) photo index | Consists of photos with physical descriptions of known or suspected members of SLA. It was used primarily as an investigative aid in the Patricia Hearst kidnapping case. | Inactive | 0 | 2 |
| Telephone number index-- gamblers | Contains information on persons identified usually as a result of a subpoera for the names of subscribers to particular telephone numbers or toll records for a particular phone number of area gamblers and bookmakers. The index cards are filed by the last three digits of the telephone number. The index is used in gambling investigations. | Active | 2 | 2 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Telephone subscriber and toll record check index | Contains cards with information on persons identified as the result of a formal request or subpoena to the phone company for the identity of subscribers to particular telephones or toll records for particular telephone numbers. The index cards are filed by telephone number and would also include identity of the subscriber, billing party's identity, subscriber's address, date of request from the telephone company, and file number. | Active | 1 | 1 |
| Thieves, couriers, and fences photo index | Consists of photos and background information on individuals who are or are suspected of being thieves, couriers, or fences based on their past activity in the area of interstate transportation of stolen property. It is used as an investigative aid. | Active | 1 | 4 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Top burglar album | Consists of photos and background data of known and suspect top burglars involved in the area of interstate transportation of stolen property. It is used as an investigative aid. | Active | 0 | 4 |
| Top hoodlum album | Consists of photos with background information of individuals who are nationally and locally prominent hoodlums. This was used as an investigative aid in identifying and locating individuals in this category. One office destroyed its top hoodlum index subsequent to our review. | Inactive | 0 | 10 |
| Top jewel thief index | Consists usually of photos with descriptive data on major jewel thieves who are known to be involved in activities throughout the United States. This index serves as an investigative aid in following the activities of major jewel thieves. Discontinued in 1973, it was expanded and renamed the top thief program. (See below.) | Inactive | 1 | 24 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Top ten program file | See description and use in appendix III, page 44. | Active | 0 | 40 |
| Top thief program index | Consists of cards of individuals who are professional burglars, robbers, or fences dealing in items likely to be passed in interstate commerce or who travel interstate to commit the crime. Usually photograph and background information would also be included on the index card. The index is used as an investigative aid. | Active | 1 | 27 |
| Truck hijack photo album | Contains photos and descriptive data of individuals who are suspected truck hijacks. It is used as an investigative aid and also used for displaying photos to witnesses or victims to identify unknown subjects in hijacking cases. | Active | 1 | 4 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Truck thief suspect photo album | Consists of photos and back-ground data on individuals previously arrested or who are currently suspects re-garding vehicle theft. The index is used as an investigative aid. | Active | 0 | 1 |
| Traveling crim-inal photo album | Consists of photos with identifying data of in-dividuals convicted of various criminal offenses who may be suspects in other offenses. It is used as an investigative aid. | Active | 0 | 1 |
| Veterans Ad-ministration (VA)/Federal Housing Ad-ministration (FHA) matters index | Consists of cards of in-dividuals who have been the subject of an FBI investigation concerning VA and FHA matters. It is used as an investiga-tive aid. | Active | 0 | 1 |
| Wanted fliers file | See description and use in appendix III, page 45. | Active | 0 | 45 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Weatherman fugitive lead index | Consists of cards of individuals contacted in connection with attempts to apprehend Weatherman fugitives. | Active | 0 | 1 |
| Weatherman photo album | See description and use in appendix III, page 45. | Active | 1 | 51 |
| Wheeldex | Contains the nickname and case file numbers of organized crime members. It is used in organized crime investigations. | Active | 0 | 1 |
| White-collar crime index-- Small Business Administration (SBA) loans | Consists of a computer printout of individuals who received an SBA loan in one county because of a flood in 1973. This was used to help determine which loan to investigate for possible fraud. | Inactive | 1 | 1 |
| Witness protection program index | See description and use in appendix III, page 45. | Active | 0 | 39 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Wounded Knee album | Consists of photos with descriptive data of individuals arrested during the Wounded Knee takeover in 1973. | Inactive | 0 | 2 |
| Major case indexes: | | | | |
| Investigation of the killing of John Roselli | Consists of index cards with general information, mostly on persons related to the investigation (such as subjects, suspects, and persons interviewed), and other key data (such as license plate numbers, telephone numbers, and physical evidence). The cards are used in complex and significant investigations to keep track of all the information related specifically to that investigation. (Also see p. 14 of this report.) | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation under the Racketeer Influenced and Corrupt Organiza-tions--(RICO) Statute-- vehicle license plate infor-mation index | Same as above. | Active | 1 | 1 |
| Investigation of an extortion-ist credit transaction-- vehicle license plate and reg-istration in-formation in-dex | Same as above. | Active | 1 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation involving fake fencing opera- tion, operation store front-- index of persons recorded on videotape | Same as above. | Inactive | 0 | 1 |
| Investigation involving fake fencing operation, operation store front--index of persons monitored during appearance at store front | Same as above. | Inactive | 0 | 1 |
| Investigation of Gerald Randolph Ford in connec- tion with his appointment as Vice President of the United States | Same as above. | Inactive | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation into the disappearance of James Riddle Hoffa (note c) | Same as above. | Active | 1 | 3 |
| Investigation of two former registered nurses at a Veterans Administration hospital concerning the death of several patients | Same as above. | Active | 0 | 1 |
| Investigation of five suspects in a bank robbery which resulted in the killing of a police officer | Same as above. | Active | 1 | 2 |

c/One field office also maintained a photo album in connection with the investigation.

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation of 10 subjects, 2 of whom are FBI top 10 fugitives, involved in a bomb threat | Same as above. | Active | 0 | 1 |
| Investigation under the Racketeer Influenced and Corrupt Organizations Statute of numerous businesses involved in planned bankruptcies | Same as above. | Active | 1 | 1 |
| Investigation of the unauthorized disclosure of classified information concerning the United States-Vietnam relations | Same as above. | Inactive | 1 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
| --- | --- | --- | --- | --- |
| | | | Not fully retrievable | Total |
| Investigation of an individual concerning bank fraud and em- bezzlement and bribery matters | Same as above. | Inactive | 1 | 1 |
| Investigation into bombing of the Pentagon complex in Arlington, Virginia, in 1972 | Same as above. | Active | 0 | 1 |
| Investigation of in- dividuals who are potential subjects of fraud against the Veterans Ad- ministration | Same as above. | Active | 0 | 2 |
| Investigation of a bank failure | Same as above. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation of a shipbuilding company concerning possible fraud against the Government | Same as above. | Active | 0 | 1 |
| Investigation into the kidnapping of an individual | Same as above. | Inactive | 0 | 1 |
| Investigation into the kidnapping and murder of an FBI agent's daughter | Same as above. | Active | 0 | 1 |
| Investigation into the burglary of the Media, Pennsylvania, FBI Resident Agency | Same as above. | Inactive | 0 | 1 |
| Investigation of a major bombing matter | Same as above. | d/Inactive | 0 | 1 |

d/This index was destroyed subsequent to our review.

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation of a major bombing matter | Same as above. | e/Inactive | 0 | 1 |
| Investigation of a major bombing matter | Same as above. | Active | 0 | 1 |
| Investigation into the meat industry activities in one State for possible bribery/conflict of interest | Same as above. | Active | 0 | 1 |
| Investigation of the murder of an individual on an Indian reservation | Same as above. | Active | 0 | 1 |
| Investigation of two fugitives wanted in connection with interstate transportation of stolen property | Same as above. | Active | 0 | 1 |

e/This index was destroyed subsequent to our review.

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation of two individuals and one company in connection with a fraud by wire case | Same as above. | Active | 0 | 1 |
| Investigation of a major bombing matter | Same as above. | Active | 0 | 1 |
| Investigation of a major bombing matter | Same as above. | Active | 0 | 1 |
| Investigation of a major theft involving the interstate transportation of stolen property | Same as above. | Inactive | 0 | 1 |
| Investigation involving internal security matters | Same as above. | Active | 0 | 1 |
| Investigation of the kidnapping of Virginia Piper | Same as above. | Active | 1 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | not fully retrievable | Total |
| Investigation of the disappearance of Janice Kathryn Pockett | Same as above. | Inactive | 1 | 1 |
| Investigation into a county bail bond payoff kick- back | Same as above. | Active | 0 | 1 |
| Investigation of a group under the domestic security program | Same as above. | Active | 0 | 1 |
| Investigation of a major bombing matter | Same as above. | Active | 0 | 1 |
| Investigation of an individual in- volved in inter- state gambling activities | Same as above. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation of a company involving violations related to statutes governing Federal lending and insurance agencies | Same as above. | Active | 0 | 1 |
| Investigation concerning the kidnapping of a bus driver and 26 school children in Chowchilla, California | Same as above. | Inactive | 1 | 1 |
| Investigation concerning political corruption and kickbacks in one county | Same as above. | Active | 0 | 1 |
| Investigation into the theft of firearms from a U.S. armory | Same as above. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation concerning the hijacking of an airlines flight where the unknown hijacker parachuted from the aircraft after receiving the ransom demand | Same as above. | Active | 1 | 1 |
| Investigation of a senior circuit court judge under the Racketeer Influenced and Corrupt Organization Statute | Same as above. | Inactive | 0 | 1 |
| Investigation involving a fake fencing operation, sting I | Same as above. | Inactive | 0 | 1 |
| Investigation involving a fake fencing operation, sting II | Same as above. | Inactive | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation into the murders of several individuals near the Capital Beltway in Washington, D.C. | Same as above. | Inactive | 0 | 1 |
| Investigation of the blocking of an interstate highway by a group of truckers | Same as above. | Inactive | 1 | 1 |
| Investigation of the bombing of the U.S. Capitol | Same as above. | Inactive | 0 | 1 |
| Investigation into the car bombing which killed Chilean official Orlando Letelier | Same as above. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation concerning the assassination of President John F. Kennedy, including Jack Leon Ruby and Lee Harvey Oswald (note f) | Same as above. | Active | 1 | 1 |
| Investigation involving a fake fencing operation--operation store front, index of persons recorded on video-tape | Same as above. | Active | 1 | 1 |
| Investigation involving a fake fencing operation--operation store front, index of subjects of investigation | Same as above. | Active | 1 | 1 |

f/See p. 13 of this report.

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation concerning a bank fraud and embezzlement | Same as above. | Active | 0 | 1 |
| Investigation of a U.S. Marshal's office at the Department of Justice's request | Same as above. | Active | 1 | 1 |
| Investigation of a possible conspiracy to kidnap a high U.S. Government official and blow up tunnels in the District of Columbia | Same as above. | Inactive | 0 | 1 |
| Investigation involving an internal security matter | Same as above. | Inactive | 0 | 1 |
| Investigation related to Patricia Hearst kidnapping | Same as above. | Inactive | 1 | 3 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation concerning the bombing of TWA passenger terminal at La Guardia Airport | Same as above. | Active | 0 | 1 |
| Investigation of land fraud dealings in Phoenix, Arizona | Same as above. | Active | 0 | 1 |
| Investigation of extortion by threat of bombing 200 major U.S. companies by unknown subject | Same as above. | Active | 1 | 1 |
| Investigation into a series of bombings in the west coast area | Same as above. | Inactive | 1 | 1 |
| Investigation concerning an illegal gambling business | Same as abcve. | Active | 1 | 1 |

99

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Investigation into possible organized crime influence over waterfront businesses and unions in Atlantic and Gulf ports | Same as above. | Active | 3 | 8 |
| Investigation of the murder of two FBI agents on the Pine Ridge Indian Reservation | Same as above. | Inactive | 0 | 2 |
| Investigation of an individual under the Racketeer Influenced and Corrupt Organizations Statute | Same as above. | Active | 0 | 1 |
| Telephone numbers relating to a specific investigation | Same as above. | Active | 1 | 1 |
| Telephone numbers relating to a specific investigation | Same as above. | Active | 0 | 1 |

| Title | Description and use | Status | Number of field offices maintaining index | |
|---|---|---|---|---|
| | | | Not fully retrievable | Total |
| Telephone numbers relating to a specific investigation | Same as above. | Active | 0 | 1 |
| Electronic surveillance indices records system | See description and use in appendix III, page 49 The field offices that have implemented electronic surveillance since 1960 maintain an ELSUR index. A few field offices have separated their ELSUR index cards into some of the following categories: <br><br>--Black Panther Party<br>--Students for a Democratic Society<br>--White Panther Party<br>--Security<br>--Organized crime<br>--Court ordered<br>--Consensual monitoring<br>--Microphone surveillance | Active | 0 | 58 |

## INVESTIGATIVE INDEXES

### FBI FOREIGN LIAISON OFFICES (note a)

| Title | Description and use | Status | Number of foreign liaison offices maintaining index Not fully retrievable through liaison central records | Total |
|---|---|---|---|---|
| Check circular file | See description and use in appendix III, page 35. | Active | 0 | 1 |
| Fugitive alert file | See description and use in appendix III, page 38. | Inactive | 0 | 1 |
| Identification order, fugitive fliers file | See description and use in appendix III, page 39. | Active | 0 | 4 |
| Informant index | Consists of cards with descriptive data on individuals furnishing information to the FBI | Active | 0 | 3 |
| Key activist program photo album | See description and use in appendix III, page 39. | Inactive | 0 | 1 |

a/Does not include three classified indexes.

102

| Title | Description and use | Status | Number of foreign liaison offices maintaining index | | Total |
|---|---|---|---|---|---|
| | | | Not fully retrievable through liaison | central records | |
| Revolutionary Com-munist Party photo album | See description and use in appendix III, page 42. | Active | | 0 | 1 |
| Royal Canadian Mounted Police--wanted circular file | See description and use in appendix IV, page 73. | Active | | 0 | 1 |
| Stop notice index | See description and use in appendix IV, page 77. | Active | | 0 | 1 |
| Top ten program file | See description and use in appendix III page 44 | Active | | 0 | 4 |
| Wanted flyers file | See description and use in appendix III, page 45. | Active | | 0 | 1 |

103



# UNITED STATES DEPARTMENT OF JUSTICE

### WASHINGTON, D.C. 20530

Address Reply to the
Division Indicated
and Refer to Initials and Number

DEC 6  1977

Mr. Victor L. Lowe
Director
General Government Division
United States General Accounting Office
Washington, D.C.  20548

Dear Mr. Lowe:

This letter is in response to your request for com-
ments on the draft report entitled "FBI Investigative
Indexes--Action Needs to Be Taken To Be In Compliance
With The Privacy Act Of 1974."

We are in general agreement with the findings and
recommendations contained in the report, which for the
most part acknowledge the propriety of the FBI's inter-
pretive position.  We agree with the need for Congress
to have a detailed knowledge of the FBI's indices and
recordkeeping practices in order to be in a position
to promulgate legislation in this area.

Initial implementation of the notice provisions of
the Privacy Act proved to be extremely complex.  The FBI,
like other agencies, was required to commence implementa-
tion prior to the issuance of the Office of Management
and Budget guidelines.  Further, as the report indicates,
the guidelines, when issued, left a large degree of dis-
cretion with the agencies in implementing these pro-
visions.  Consequently, there was little guidance in
answering the threshold question -- "What is a system
of records?"  However, with the Department's approval,
the FBI's approach was to identify and publish all group-
ings of records about individuals if the groupings con-
tained information which was not retrievable from a search
of our Headquarters central index or the respective field
office general indices.



In carrying out this approach each FBI Headquarters
Division was queried to ascertain whether such systems
existed.  The FBI specifically excluded those records
which were duplicative of information retrievable through
the Headquarters general index.  Field offices were not
queried, but by letter dated July 13, 1976, the field
was reminded that in accordance with standard existing
FBI policy and regulations, no investigative records are
to be maintained separately that cannot be accessed
through the general indices.  Additionally, as the report
notes, during the past year the FBI Inspection Division
has been examining field office indices in light of the
Privacy Act.  Because of the paucity of legislative history
and lack of specific implementation guidelines concerning
this area of the Privacy Act, the FBI welcomed this study
of its investigative indices and worked closely with GAO
in identifying problem areas with its implementation of
the notice provisions.

To insure full compliance with the provisions of
the Privacy Act, each field office is being furnished
a copy of the draft report with instructions to check
all indices maintained by them against the report and
to take one of the three options available to bring all
indices into compliance with the Privacy Act.  Similarly,
the Headquarters Divisions are receiving the same instruc-
tions.

As indicated previously, we appreciate GAO's assis-
tance in this endeavor to insure FBI indices are being
maintained in full compliance with the Privacy Act and
commend the thoroughness and objectivity of the individ-
uals from GAO involved in this study.

We also appreciate the opportunity given us to
comment on the draft report.  Should you have any
further questions, please feel free to call us.

Sincerely,

Kevin D. Rooney
Assistant Attorney General
for Administration

Case 1:12-cv-00313-BAH   Document 150-1   Filed 06/23/23   Page 115 of 115

<u>PRINCIPAL OFFICIALS RESPONSIBLE</u>

<u>FOR ADMINISTERING ACTIVITIES</u>

<u>DISCUSSED IN THIS REPORT</u>

| | Tenure of office | |
|---|---|---|
| | From | To |
| **DEPARTMENT OF JUSTICE** | | |
| ATTORNEY GENERAL OF THE UNITED STATES: | | |
| Griffin B. Bell | Jan. 1977 | Present |
| Edward H. Levi | Feb. 1975 | Jan. 1977 |

<u>FEDERAL BUREAU OF INVESTIGATION</u>

| | | |
|---|---|---|
| DIRECTOR: | | |
| Clarence M. Kelley | July 1973 | Present |